THE CONGREGATIONAL CHURCH .OF WHITE RIVER VILLAGE

*v.*

ROBERT D. BENEDICT et al.

[Filed December 15th, 1899.]

1. A testator's personal representatives are necessary parties to a suit to subject land to the payment of a legacy.

2. The death of the executor does not justify a failure to make the personal representative a party, as an administrator with the will annexed may be appointed.

3. A will bequeathing the residue of a testator's estate, "not expended in satisfying" a previous bequest, does not enable the previous legatee to enforce payment of his legacy from land acquired by the residuary legatee while there are personal assets applicable to the payment thereof.

4. That an executor directed the removal of the bodies of testator's three brothers to a distant cemetery without proof of the expense thereof is insufficient to show an insufficiency of personal assets to pay a legacy of $1,000, where the executor had $1,661 on hand after payment of funeral expenses and costs of administration.

5. A presumption of a payment of a legacy arises after the expiration of twenty years from the time of the accrual of a right to it.

6. In a suit by a church to enforce the payment of a legacy of $1,000 out of land twenty-eight years after testator's death, evidence by some of the officers of the church of ignorance of the legacy held insufficient to preclude the presumption of payment arising from lapse of time.

7. The fact that a legatee was ignorant of the existence of the legacy will not preclude the presumption of payment arising from a lapse of twenty years, as against a purchaser, where the executor had ample personal assets to pay the legacy and the purchaser did not know that the assets were not applied in the payment of the legacy.

On final hearing on pleadings and proofs.

*Mr. Robert H. McCarter,* for the complainant.

*Mr. James P. Powers,* and *Mr. Robert D. Benedict* (of New York), for the defendants.

STEVENS, V. C.

The bill prays that a certain legacy conditionally given by the will of Edward W. Marsh to the complainant may be decreed to be a charge upon certain lands of the defendants in Plainfield and that these lands may be sold to satisfy the charge.

Very generally stated, the direction of the will is that the executors pay over to the proper person authorized to receive the same in the town of Hartford, Vermont, the sum of $400 in trust in perpetuity, to invest in bond and mortgage and pay the interest arising from the investment for the repair of the graves of testator, his parents and brothers, in a burying-ground situated near White River Village, in Vermont. The testator

then bequeaths $1,000 in trust to the complainant if it be found
impracticable to invest the sum of $400 in trust as directed,
"*either from illegality or any other cause.*"

It was insisted on behalf of the defendants that it had not
been found impracticable to invest the $400, and that, conse-
quently, the contingency had not arisen on which alone the
complainant's legacy vested, but for the purposes of this opinion
I shall assume that it had, for it appears to me that even on
that assumption the complainant cannot recover.

The will bears date August 19th, 1865. The testator died in
1868. He was, at the time of his death, a resident of Plain-
field, and his will was probated in Union county, in this state,
and in Kings county, New York. The account filed in New
Jersey shows the receipt of $521.67, used principally to pay
bills for funeral expenses and nursing. The inventory filed in
New York shows personal property to the amount of $1,661.17.
How this was disposed of does not appear. By the last clause
of his will testator bequeathed "all the rest and residue" of his
estate "not expended in satisfying the foregoing bequests" to
Leonard Marsh and Daniel Marsh, his cousins. This residue
appears to have consisted of a valuable plot of land in Plain-
field and of land in the States of New York and Ohio.

Shortly after testator's death, Daniel and Leonard, ignoring
(so the bill charges) the fact that the legacy to the church was
charged on the lands, took possession of the Plainfield tract,
surveyed it, and on February 13th, 1869, by their indenture of
partition, divided it between them. On October 6th, 1871,
Daniel sold and conveyed his portion to Robert D. Benedict,
who still holds the same. Leonard's portion was sold by lots
for valuable consideration, at various times, to various pur-
chasers, between 1870 and 1891. The purchasers have, in
nearly every instance, resold, and several of the lots have been
mortgaged. All the present owners and mortgagees, thirty-
three in number, are parties defendant, and every one of them
is admitted to be a *bona fide* purchaser for value without notice
except in so far as the will of Edward W. Marsh, through
which, of course, all the present owners claim, gave him notice

Congregational Church of White River Village *v.* Benedict.

that the legacy was, not in express words but by the legal effect of the before-quoted language contained in the residuary clause, charged upon the land. The bill does indeed allege that the various grantees of the property had notice that the legacy was unpaid, but this allegation is denied by the answer, and there is not the slightest proof of it.

The bill cannot be maintained for several reasons—

*First.* The complainant has not brought before the court the personal representatives of the testator. Whether the language of the will does or does not impose a charge upon the realty, it is very plain that the personalty is the primary fund for the payment of legacies and that a personal representative of the deceased must be before the court. It is alleged in the bill that Parse, the New Jersey executor, is dead, and that Dr. Leonard Marsh, who proved the will in New York, is also dead. This only shows the necessity for the appointment of an administrator with the will annexed if no one has yet been appointed. *Dodd* v. *Lindsley, 8 Dick. Ch. Rep. 69, 652; Dodson* v. *Severs, 8 Dick. Ch. Rep. 348.*

*Second.* It is charged in the bill that by the effect of the residuary clause complainant's legacy is chargeable on the land. This is so if there be no personal estate out of which to pay. The established rule is that personalty is the primary fund for the payment of legacies. The real estate is not chargeable until the personal estate is exhausted. In fact, the rule goes further. *Johnson* v. *Poulson, 5 Stew. Eq. 390.* There is no evidence that the personal estate is exhausted. The proof is that it amounted to $2,182.84. Of this $521.67 was used to pay funeral expenses, nursing and the cost of administration in New Jersey. What was done with the money which went to the New York executor, who was also residuary legatee, does not appear. He may have used it in whole or in part to satisfy debts of the estate or he may have taken it as residuary legatee. It does not appear that the testator died indebted. He gave no legacies except the $400 legacy and complainant's legacy of $1,000, which was substituted for it on the contingency mentioned. He did indeed direct the removal to Hartford of the

remains of two of his brothers from Greenwood cemetery and of a third, who had resided in Wisconsin, if he could be found, but there is not the least evidence of what this cost. Of the proof it may be said, as was said in *Johnson* v. *Poulson*, that it does not establish satisfactorily the insufficiency of the personal estate to pay the legacy.

*Third.* But assuming that by reason of the exhaustion of the personal assets the church became entitled to have the legacy of $1,000 charged on the land, the question arises whether the complainant is not barred by lapse of time. Twenty-eight years have elapsed between the testator's death and the filing of the bill. As courts of equity act in analogy to the statute of limitations, it is settled law that a presumption of payment of a legacy arises after the expiration of twenty years from the time of the accrual of the right to it. *Campbell* v. *Graham, 1 Russ. & M. 453; Magee* v. *Bradley, 9 Dick. Ch. Rep. 326; Blue* v. *Everett, 11 Dick. Ch. Rep. 455.* Since the decision of the case last named, it is at least arguable that, as against one who may, like the defendants in the present case, be said to hold adversely, the presumption is conclusive. It is not necessary, however, to express an opinion on this question, as, under a less stringent rule, the complainant's claim cannot be sustained. The only reason assigned for taking the case out of the operation of the rule is that complainant was *ignorant* that the gift had been made until shortly before suit commenced. Now, as against *bona fide* purchasers for value, so long in possession, without notice that the executors had not performed their duty, it seems to me that very satisfactory proof of ignorance should be required. The proof stands thus: Noah B. Hazen, who was treasurer in 1869; Ephraim Morris, who was clerk and treasurer from 1870 to 1882, and Horace C. Peace and Samuel E. Pingry, members of the congregation, testify that they first heard of the legacy in 1895. Edward W. Morris, who was its treasurer from 1883 to 1886, in answer to the question, when he first learned that the church was a beneficiary, said that it was four or five years ago; that he might have heard of it incidentally at the time. On cross-examination, he said that, thinking the matter over,

"there is an impression on my mind that I might have heard something about it before—a sort of dim recollection." Jonathan Buzbee said that he had been "on the committee" (by which I understand him to mean the committee of the society mentioned in Mr. Hazen's testimony, which attended to the temporal affairs of the church), and that he had heard at the time that Mr. Marsh had willed "so much to the cemetery and part for the church—somewhere about $1,000 for the whole." Now, on this evidence it seems to me to be impossible to assert that it is satisfactorily proved that the complainant corporation had no notice of the legacy. It is said that, so long a time having elapsed, it is impossible to prove ignorance more certainly. But the impossibility of obtaining satisfactory proof after a lapse of twenty years was the main reason for passing the statute, and the main reason why courts of equity act in analogy to it. Most of the gentlemen who testified as above were connected with the cemetery company which had been organized shortly before Mr. Marsh's death, and which had, perhaps without legal authority, taken charge of the ground in which the Marsh's family were buried. They all knew of the legacy of $400. Dr. Leonard Marsh, who lived in the same state, had entered into correspondence with them about it, with the result, as it would seem, that the cemetery company declined to accept it. Besides this, in re-interring the testator and his brothers in the burying-ground which was regarded as the church burying-ground, Dr. Marsh must have found it necessary to make one or more visits to White River Village, and to have conversed with the pastor and other members of the congregation. It is quite within the bounds of possibility that in the course of these conversations he may have spoken of the complainant's legacy to some of its officers. The testimony of Mr. Buzby and of Mr. Edward Morris appears to indicate this. At all events, there is no satisfactory proof that he did not. I think, therefore, that ignorance not being satisfactorily made out, there is no reason shown for disregarding the bar.

*Fourth.* If ignorance had been clearly proved, I should still doubt whether it would avail as against persons standing in the

position of defendants. These defendants are neither trustees nor volunteers, but purchasers for value. On the assumption of ignorance, the executors failed in the performance of their duty to complainant by failing to notify it of its legacy, but they equally failed in the performance of their duty to the defendants by failing to pay complainant's legacy when it appears beyond all controversy that they had funds to pay the same—funds derived either from the personal estate or from the proceeds of the sale of the very real estate which it is sought here to charge. If complainant was ignorant of the existence of the legacy, defendants were ignorant of its non-payment under circumstances which justified them in believing that it was or would be paid. If the ignorance of the church, therefore, should be deemed to be an equitable ground for avoiding the effect of the bar, the ignorance of the purchasers of the land ought, at this distance of time, to be regarded as an equitable ground for maintaining it.

The bill should be dismissed.