RICHARD G. STEVENSON, administrator,

*v.*

PAUL H. MARKLEY et al., executors, &c.

[Decided March 7th, 1907.]

1. An amendment to a bill, intended only to strengthen matters alleged in the original bill, is not permissible under an order granting complainant leave to amend by inserting in the bill allegation excusing the delay in the bringing of the suit.

2. Whether a court will strike out a bill on the allegation of laches is a matter of discretion, and the court will generally permit the proving of the facts excusing laches and determine whether such facts excuse.

3. A suit by the representative of a deceased ward against the representative of the deceased guardian for an accounting is not properly cognizable in the orphans court, and is within the jurisdiction of a court of equity.

4. A guardian receiving property of a ward becomes a trustee for the ward until a proper accounting is had, and the fact that the ward acquires the right to call for an accounting at a particular time does not fix such time as a period from which either the statute of limitations or equitable principles in analogy thereto apply.

5. *Gen. Stat. p. 5,* concerning the action of account, gives a right of action for an account against a guardian, and *Gen. Stat. p. 1974* § 8 pro-

vides that an action of account shall be commenced within six years next after the cause of action shall have accrued.—*Held,* that a suit in equity to compel a guardian to account is not barred by the statute. The fact that a court of law acquired jurisdiction by the statute did not affect the jurisdiction of equity previously existing.

6. A ward attaining her majority in 1883 died in 1885, before the guardian had rendered an account. The guardian died in 1905. In 1906 an administrator of the deceased ward was appointed, who, in the same year, sued the representative of the deceased guardian for an accounting. —*Held,* that the suit was not barred by limitations, though the cause of action accrued on the ward's death, since limitations did not begin to run until the appointment of her representative.

Heard on motion, under rule 213, to strike out bill.

*Mr. Francis D. Weaver,* for the complainant.

*Mr. Howard M. Cooper* and *Mr. Herbert A. Drake,* for the defendants.

GARRISON, V. C. (orally).

This is a hearing upon a motion made by the defendants for leave to withdraw their answer to the original bill, and to move to strike out the bill for want of equity, and various parts of the bill for specific reasons stated.

Upon a hearing had on the 10th day of December, 1906, it appeared to the court that the face of the bill disclosed a cause of action so old that, in default of explanation, the court would be inclined to dismiss the same for laches if the defendants had so moved the court. The court not finding among the reasons or objections of the defendants any one based upon laches, and the complainant moving for leave to amend by setting up facts explaining the laches, the latter motion was granted, and an order of the 10th of December, 1906, was entered. That order, in so far as it is now material, provided that the complainant "have leave to amend his bill by inserting therein such charges as he may be advised or able to do concerning the reasons for the delay in the bringing of his suit." And it was further therein ordered that all other proceedings should remain in *statu quo.*

Thereafter the complainant filed amendments, which he has

numbered 14*a* and 14*b*, and upon the amended bill the defendants have now moved, under rule 213, to strike out this bill and various parts thereof.

I am inclined to the opinion that the amendment numbered 14*a* is not within the permission of the order of the 10th of December. It does not seem in any way to set forth, or could it be considered as giving, a reason for the delay. It apparently is some additional allegation concerning some of the previous matters alleged in the bill, and is evidently intended to strengthen the charges of the bill in these respects. That was not within the purview of the order made on the 10th of December, and the complainant, under that order, cannot claim the right to make this amendment. If he has the right it must be asserted in a proceeding where that matter comes directly under consideration.

I will therefore grant the motion to strike out the amendment numbered 14*a*.

The other general heads are that the bill does not show equity; that because the thing sued for is a sum of money due the representative of a deceased ward by the representative of a deceased guardian, and is therefore an action of account, it is claimed by the defendants that suit must be brought thereon within six years, under the statute of limitations. It is also claimed that the complainant is in laches unexplained, and that there is therefore no equity in the bill.

It is further claimed that by the amendment 14*b* the complainant sets out another cause of action than that previously pleaded, and an incongruous one with respect to the latter.

I do not find that the complainant has changed his prayer in the least, nor that he prays any relief with respect to this matter as alleged in this paragraph. That matter seems to have been inserted wholly under the permission of the court as a reason or explanation of his delay in bringing suit upon the cause of action which is urged in the bill and for which appropriate relief is prayed in the prayer thereof.

With respect to the matter of the statute of limitations applying, I have examined this matter with great care, and have read most, if not all, of the authorities, and considered them very carefully. The matter is an open one in New Jersey, and is in

grave doubt. I am rather inclined to think that our courts should follow the English and New York courts in holding that the relation of guardian and ward is a continuing trust, and that until the guardian settled with the ward or the ward's representatives it must be held to be a continuing, direct trust which is not affected by the statute of limitations. This, of course, is in a case where the guardian has not denied the ward's right and has not taken a position of antagonism, from the time of which open expression of antagonism the statutes of limitations or imputations of laches are always held to run. Therefore I am not going to strike this bill out, either for want of equity or because barred by the statute of limitations, or because the allegations of the amendment 14*b* are incongruous with the main cause of action set up in the original bill.

The defendants have answered so much as was in the original bill, and their answer may stand, if they so desire, or they may make a totally new answer to this bill as amended.

I do not wish by this decision to be understood as determining that the matter in 14*b* which is permitted to stay in the bill as an amendment is a satisfactory answer to the charge of laches, or that the court may not, on final hearing, reach the conclusion that there was laches, but I am disinclined to absolutely deprive the complainant of his day in court upon the ground of laches in the face of a charge in the bill that there was some sort of an agreement or understanding between him and the person whom he seeks to hold as trustee concerning the subject-matter of the trust which, when disclosed in detail, may explain or excuse the delay.

Whether a court will strike out a bill or sustain a demurrer—which is the same thing—upon the allegation of laches is, of course, a matter of discretion, and I do not think it would be discreet, legally speaking, to prevent this complainant from proving the facts, after which it will be entirely open to the court to determine whether such facts excuse or fail to excuse the long delay which has ensued in the asserting of his rights. I do not mean his rights as administrator, but his right, as husband of the deceased wife, to take all her personalty and to have administration. He had this right from the date of her death

in 1885, and did not actually take out letters until 1906. It may be that upon final hearing the court will hold that his delay in this respect defeats his right. But, as just said, I think it more appropriate to consider and decide this upon final hearing, and after he has had opportunity to make proof of the excuses for delay that he offers.

The above was the oral deliverance of the court at the time of disposing of the motion at the argument. Having been notified that an appeal has been taken by the defendants, I think it due the reviewing court that a more extended statement of facts and law be given with respect to the important question disposed of.

The essential facts are as follows: Mary Josephine Markley was the mother of Mary Markley, and was appointed her guardian by the orphans court of Camden county about October 6th, 1876, and, as such guardian, there was paid to her for the ward the sum of $4,087.14. Mary Markley, the ward, came of age on the 13th day of January, 1883. She married Richard G. Stevenson on the 26th day of March, 1885. She died on the 25th day of December, 1885. There was no accounting between her and her guardian. Her mother, the guardian, died on the 26th day of February, 1905. Richard G. Stevenson, the husband of the deceased ward, was appointed her administrator on March 1st, 1906.

This suit is for an accounting, and was brought by Richard G. Stevenson, the administrator of the deceased ward, against the executors of the deceased guardian, some time in the summer of 1906.

It is the contention of the defendants that this suit is barred, either directly by the statute of limitations or by the application by a court of equity of principles in analogy to the said statute.

It should first be observed that there are two periods to be considered and two different sets of parties, and that different principles are therefore applicable. First, there is the period between the coming of age of Mary Markley, the ward, on the 13th of January, 1883, and the time of her death on the 25th of December, 1885. During that period the parties concerned were the ward and the guardian. If the statute of limitations had begun to run then the death of the ward would not toll the same.

This is too well settled to require citation. After the last-named date, and up until the death of the mother, the guardian, on the 26th of February, 1905, there was no one in existence in whom was vested the rights of the deceased ward against her guardian. Such a person did not exist until the 1st of March, 1906, when an administrator was appointed for the estate of the deceased ward. At that time the guardian had also died, so that the parties had completely changed, and the parties were, as above stated, an administrator of a deceased ward on one side and the executors of a deceased guardian upon the other. If the statute began to run at the death of the ward, notwithstanding that no administrator was appointed, then this suit is barred.

There are certain well-settled principles of equity which it is only necessary to refer to briefly.

A court of equity undoubtedly has jurisdiction over the accounts of guardians under the general jurisdictions over trustees, a guardian being held to be a trustee in the fullest sense of the word. *In re Hannah Barry, 61 N. J. Eq. (16 Dick.) 135 (Vice-Chancellor Emery, 1900)* ; *Sleeman* v. *Wilson, L. R. 13 Eq. 36; 1 Perry Trusts § 430; 15 Am. & Eng. Encycl. L. (2d ed.) 75.*

It is true that this jurisdiction will not be exercised saving in exceptional cases, and ordinarily an accounting between guardian and ward should take place in the orphans court. But I apprehend that the same rule with respect to the application or non-application of the statute would apply in the orphans court as in this court.

But the suit at bar is not one properly cognizable by the orphans court, because it is not between a guardian and ward, or between a guardian and the representatives of a deceased ward, but is between the representatives of a deceased ward and of a deceased guardian.

The determination of the whole question depends, in my view, upon whether the relation between a guardian and ward is held to be a trust relation—that is, a direct, continuing, subsisting trust. If it is, then the authorities are clear that the statute of limitations does not apply. There can be no doubt, I think, that the relation between guardian and ward is a trust, and is a direct, subsisting, continuing trust.

Some courts, however, hold that the trust terminates at the majority of the ward (*15 Am. & Eng. Encycl. L. 82 note 1*), and others have even fixed the period of the termination of the trust, with respect to a female ward, at the date of her marriage. *15 Am. & Eng. Encycl. L. 82 note 1.*

In some jurisdictions, therefore, it is held that when the ward comes of age, or marries, the trust relationship ceases, and the statute of limitations, or principles in analogy thereto, apply, and an action will not lie for an accounting after the period of limitation provided. *15 Am. & Eng. Encycl. L. 82 note 1.*

But other courts hold that the relation is one of trust, and is direct, subsisting and continuing until there is an accounting. *Mathew* v. *Brise, 14 Beav. 341; Matter of Camp, 126 N. Y. 377* (*Court of Appeals, 1891*). Although in a previous case in New York an opposite view had been distinctly taken and held in the case of *Bartine* v. *Varian, 2 Edw. Ch. 343* (*1832*). This case was cited to the court in the *Camp Case,* and was, of course, disregarded. See, also, *Pyatt* v. *Pyatt, 46 N. J. Eq.* (*1 Dick.*) *285* (*Court of Errors and Appeals, 1889*).

The principle upon which these last-cited cases go is that where the guardian receives property belonging to the ward he becomes a trustee for the ward with respect to such property, and remains such trustee, subject to all the incidents thereof, until a proper account is had between him and the ward, and that the fact that the ward acquires the right to call for an accounting at a particular time, considered of course in connection with the concurrent right of the trustee or guardian to go into court of his own volition and account, does not fix such time as a period from which either a statute of limitations applies or equitable principles in analogy thereto are applicable.

There being no direct decision in this state upon this subject, we are free to adopt whatever view seems best. I think it best to assimilate this trust with all other like trusts, and to hold that so long as the guardian has the property of the ward—that is, so long as he has not accounted for it—he should be held as a trustee with a direct, subsisting, continuing trust, unaffected by statutes of limitations or principles in analogy thereto.

I think the reasoning of the cases taking this view is more satisfactory than that of those which take an opposite view. I am also of opinion that the rule that I have laid down is the wiser one. It is certainly more equitable to each of the parties concerned. I see no reason why a guardian having property of the ward confided to his care should be treated in any different aspect than any other trustee to whom is confided the property of a *cestui que trust*. He has it in his power, when the ward comes of age, of ridding himself of the burden of the trust by taking the proper proceedings either in a probate court or in this court, or of course by a direct settlement with the late ward. I do not see that any good purpose is served by holding that the right which the ward has of calling the guardian to account should be construed as a strict legal right subject to the statute of limitations, and I do not think that it is within the spirit of such.

Speaking generally, those actions which are within the spirit of the statute of limitations are such as lie with an actor, and if he neglects or fails to take advantage of the legal procedure open to him for a fixed period, it is the policy of this legislation to end the right. But where trusts are concerned the situation is radically different. There, there is no one who must be the exclusive actor. Either party may, at any proper time, apply to the court and obtain full relief. Under such circumstances I can see no reason why a trustee should have protection after a stated period because the other party has not proceeded, it having been all the time within the power of the trustee himself to have proceeded had he seen fit.

Succinctly stated, the argument of the defendants is that the statute of account of this state (*Gen. Stat. p. 5*) gives the right of action for an account against a guardian, and that the statute of limitations (*Gen. Stat. p. 1974 § 8*) provides, *inter alia,* that all actions of account shall be commenced within six years next after the cause of action shall have accrued. Therefore they argue that we have a case in which there is a concurrent remedy at law and in equity, and the legal remedy is barred by the statute, whereupon a court of equity will hold that an action in

equity is likewise barred. It is unnecessary to cite any of the numerous cases which affirm this doctrine, but the doctrine is not applicable to the case in hand. The doctrine just contended for applies where the courts of law originally had jurisdiction and courts of equity subsequently obtained, or were held to have concurrent jurisdiction. There, as has been just stated, a statute of limitations which barred the right of action at law equally barred it in equity, but where the court of law did not originally have jurisdiction, the fact that it subsequently acquired it, and the action in it was barred by the statute, does not result in finding that the suit in the court of equity is likewise barred.

In the case of *Hedges* v. *Norris, 32 N. J. Eq. (5 Stew.) 192* (*Chancellor Runyon, 1880*), it was held that the statute of limitations is not a bar to a suit in equity for the recovery of a legacy payable out of the personal estate only. In that case the chancellor held that an executor was a trustee with respect to the sum of money due the legatee, and that while that trust subsisted the statute of limitations did not run in favor of the trustee. The trustee insisted that the legislature, by the act of March 11th, 1774, had provided for the recovery of legacies by actions at law, and that thereafter courts of equity and courts of law had concurrent jurisdiction, and what would bar the action in one would have a similar effect in the other. To this the chancellor replied that equity had jurisdiction over legacies before the courts of law assumed it, and he pointed out that where a court of equity has jurisdiction and a court of law subsequently acquires concurrent jurisdiction, this will not serve to deprive the court of equity of its jurisdiction, nor to bind it by limitations which affect the action at law.

With respect to the matter of account at law, it will be found that the action only lay, so far as guardians are concerned, against guardians in socage. *1 Bouv. Dict. (Rawle's ed.) 64; 1 Encycl. Pl. & Pr. 84.*

An interesting and instructive history of guardianship at common law will be found in *Foley* v. *Mutual Life Insurance Co., 138 N. Y. 333 (Court of Appeals, 1893).*

In the case of *Green* v. *Johnson, 3 Gill & J. (Md.) 389,* it is

said that "this action of account for rents and profits maintained by the heir after he had attained the age of fourteen against the guardian in socage was the only one, other than an action on the bond, that could be brought against a guardian, as guardian, in a court of law."

Ordinarily proceedings to require guardians to account must be brought in a probate court (*In re Hannah Barry, supra*), or in a court of equity if there was anything exceptional in the case requiring the interposition of a court of equity. It therefore appears that at a time when courts of equity, under their peculiar jurisdiction respecting trusts, undoubtedly had jurisdiction over the accounts of guardians the common-law courts only had a limited jurisdiction respecting guardians in socage. The effect, therefore, of the act of our legislature passed in 1794 vesting jurisdiction in the common-law courts of actions of account against guardians generally was not to divest the court of equity of its jurisdiction with respect thereto, and any limitations placed upon such common-law action do not, directly or by analogy, bind the court of equity.

Determining, then, that the relationship between a guardian and ward is a direct, subsisting, continuing trust, the conclusion is reached that, as between this ward and her mother down to the time of the death of the ward, there was no running of the statute and no application of principles of limitation analogous thereto.

The next question to be considered, therefore, is whether the statute began to run at the date of the death of the ward.

It will be observed that the second period previously spoken of by me is now under consideration.

I am of opinion that if, in this state, a cause of action, arising upon the death of a person, and not until his death, is barred if the statutory period begins to run at the date of his death, then this action or suit is barred. But I do not find that this is the law. In fact, the decisions are to the contrary. The authorities hold that where the cause of action did not exist during the life of the party, and came into existence subsequent to the party's death, the statute does not begin to run until the appointment of

a representative. *De Kay* v. *Darrah, 14 N. J. Law (2 Gr.) 288* (at *p. 296*) (*Supreme Court, 1834*); *19 Am. & Eng. Encycl. L. 219 note 3* (at *p. 220*). The time between the death of the party and qualification of personal representative is not counted. *19 Am. & Eng. Encycl. L. 220 note 3; 2 Eng. Rul. Cas. 133 note; Murray* v. *East India Co., 5 Barn. & Ald. 204 (1821)*; *Pratt* v. *Swaine, 8 Barn. & C. 285; L. J. 6 K. B. 353 O. S. (1828)*; *Atkinson* v. *Bradford Society, L. J. 59 Q. B. 360 (1890)*; *Rhodes* v. *Smethurst, 6 Mees. & W. 351; 16 Eng. Rul. Cas. 146 (1840)*; *Pinckney* v. *Burrage, 31 N. J. Law (2 Vr.) 21* (at *p. 24*).

My conclusions, therefore, are that as between guardian and ward there is a direct, continuing, subsisting trust until the guardian accounts; that the statute or implication of limitations does not apply thereto; that during the lifetime of this ward, after her coming of age and until her death, the statute had not begun to run; that at her death it may be proper to hold that the relation between the living guardian and the person entitled to call her to account was not a direct, subsisting, continuing trust outside the statute, but was a trust by implication, and therefore within the purview of limitations. But the limitation does not begin to run until there is a person entitled as representative of the deceased ward to call the guardian to account, and such a person in this case did not come into being until the appointment of the administrator of the deceased ward's estate in March of 1906. As this suit was brought almost immediately thereafter, it is, of course, not barred by the running of the statutory time against the administrator.

The motion to strike out the bill therefore fails.