The will of Charles Ecklin was admitted to probate by the surrogate of Hudson county in or about September, 1896, and William F. Melosh qualified as executor thereunder. By the will the testator left his entire estate to his wife Elizabeth Ecklin and she died a few months later leaving a will admitted to probate by said surrogate April 20th, 1897, under which said William F. Melosh qualified as executor and by which her estate passed to her grandchildren Rudolph C. Melosh (the complainant) and Elizabeth Melosh (now Phair) children of said William F. Melosh. No inventory or account of the estate of Charles Ecklin was filed, but an inventory of the estate of Elizabeth Ecklin was filed September 10th, 1897, showing that the executor had assets of $9,065.78 received from himself as executor of the estate of Charles Ecklin, as well as from other sources. November 7th, 1901, William F. Melosh as executor under the will of Elizabeth Ecklin filed an account with the Hudson county surrogate wherein he charged himself with said amount of $9,065.78 and other items, for a total of $11,043.65 and after deducting allowances prayed for and commissions, showed a balance of *Page 488 
$8,071.24 in hand. Notice of settlement of the account was given as required by law, and on December 13th, 1901, a decree of the Hudson orphans court was entered allowing the account and adjudging that said executor had in his hands $8,071.24 to be disposed of according to law. Under the terms of the will of Elizabeth Ecklin that balance belonged to the executor's two children, Rudolph then aged eight, and Elizabeth then aged sixteen. No guardian was appointed for said children, no account of the executor was subsequently filed and no record appears of payment of said balance to them.
William F. Melosh died October 18th, 1937, leaving a will admitted to probate by the surrogate of Hudson county under which letters testamentary were granted to his widow, Louise W. Melosh, and his brother, Henry J. Melosh. The complainant herein brings this suit by bill filed August 23d 1938, against his father's executors, charging that his father never paid him any part of the money to which he was entitled from the estate of Elizabeth Ecklin and alleging that his father mingled complainant's share of said estate with his own funds and invested the same for his (the father's) own benefit and praying that the defendants account to him for his said share, with compound interest thereon, or for the profits realized by his father on investments of complainant's money. Defense to the suit is made by Louise W. Melosh, executrix, and for the purpose of convenience she will be referred to hereinafter as the defendant. Her co-executor concedes that there should be discovery of and accounting for the assets of the estate of Elizabeth Ecklin which came to the hands of his testator and he joins in complainant's prayer that the court decree the sum due complainant from the estate of William F. Melosh.
1. The defendant contends that Elizabeth Melosh Phair, sister of complainant, should have been made a defendant herein as a necessary party to these proceedings, because under the will of Elizabeth Ecklin she was to share equally with complainant in said estate. She has a suit pending in this court against the executors of William F. Melosh wherein she seeks relief similar to that sought here. It is argued *Page 489 
that since complainant in this suit prays accounting for the estate of Elizabeth Ecklin and a decree directing the executors of William F. Melosh to pay the amount of that estate to an administrator thereof cum testamento annexo, Mrs. Phair has a material interest in having that amount determined.
The complainant here is really seeking a determination that William F. Melosh, executor, did not pay him his share of the estate of Elizabeth Ecklin and an accounting for that share and a decree that the estate of William F. Melosh is liable to him for the amount found to be due him. To obtain the relief sought by complainant it will not be necessary that an account be taken of the estate of Elizabeth Ecklin and that a decree be made directing the payment of the whole estate to an administratorcum testamento annexo for if it appears from the evidence that a definite sum is due complainant, there can be a decree that the executors of William F. Melosh pay him that sum and in that view of the case, Mrs. Phair is not a necessary party. Davison v.Rake, 45 N.J. Eq. 767.
2. It is contended that the decree of the Hudson orphans court entered December 13th, 1901, on the account of William F. Melosh as executor of Elizabeth Ecklin is conclusive and cannot be attacked in this proceeding.
Section 127 of the Orphans Court act (R.S. 3:10-18) provides that the decree of the orphans court on the final account of an executor shall be conclusive, except as to assets which may come to his hands thereafter, or where fraud or mistake in the account is proven to the satisfaction of the court. The account in question does not purport to be a final account; it is entitled "The first account" and the decree allowing the account does not state it to be a final decree, but the cited section applies to intermediate as well as final accounts of executors and the decree is conclusive unless the complainant has shown fraud or mistake. Beam v. Paterson Safe Deposit, c., Co., 96 N.J. Eq. 141; affirmed, 99 N.J. Eq. 427.
Complainant claims that there was fraud or mistake on the accountant's part in not charging himself with the full *Page 490 
amount he received from himself as executor of Charles Ecklin. As executor of the latter estate William F. Melosh filed no inventory or account. In his inventory of the estate of Elizabeth Ecklin he charged himself with cash in hand as executor of Charles Ecklin, received from L. Marcotte Co. and other sources for a total of $9,674.31 and deducted therefrom $750.53 for expenses, and stated that a balance of $8,923.78 was in his hands as executor of Charles Ecklin but belonged to the estate of Elizabeth Ecklin.
Henry J. Melosh testified that in 1909 when discussing with his brother the size of the estate of Elizabeth Ecklin, his brother told him (Henry) that he (William) had received a total of $13,000 from Marcotte Co.; that he (Henry) subsequently examined the account his brother had filed as executor of Elizabeth Ecklin and found that William had accounted for $4,000 less than he had told Henry had been received from Marcotte 
Co.; that he (Henry) charged William with seeking to defraud his (William's) children: that William said he would not account to his children for the omitted sum because they might make trouble and that Henry and William then had a terrible quarrel and did not speak to each other for eight years thereafter. This testimony was given nearly thirty years after the conversation related was said to have occurred, and it is the only evidence relied on to show that through fraud or mistake the Marcotte payment was omitted from the account in question. I know how treacherous one's memory can be in an attempt to recall conversations and transactions of long ago, especially a conversation dealing with figures, and I am unwilling to hold on said testimony that there was either fraud or mistake in accounting for the true amount the accountant received from Marcotte Co. I do hold that the decree on such account settles the amount that was in the hands of William F. Melosh as executor of Elizabeth Ecklin as of the date of the accounting.
3. Defendant contends that complainant's claim is barred by lapse of time and by complainant's laches in seeking to enforce his claim. *Page 491 
The bill herein was filed forty-two years after the will of Elizabeth Ecklin was probated; thirty-seven years after the decree was entered allowing the account of William F. Melosh executor of her estate and twenty-four years after complainant became of age.
The statute of limitations does not apply, in terms, to courts of equity but those courts act in analogy to the statute and hold that a presumption of payment of a legacy arises after the expiration of twenty years from the accrual of the right to receive it, unless circumstances are shown which will rebut such presumption. Congregational Church, c., v. Benedict, 59 N.J. Eq. 136; affirmed, 62 N.J. Eq. 812.
A person cannot be deprived of his remedy in equity on the ground of laches unless it appears that he had knowledge of his rights, and neglected prompt prosecution of his remedy after knowing that his rights had been invaded. Hall v. Otterson,52 N.J. Eq. 522; affirmed, 53 N.J. Eq. 695; Scheel v. Jacobson,112 N.J. Eq. 265; Giehrach v. Rupp, 112 N.J. Eq. 296.
The decree on the account of William F. Melosh as executor of Elizabeth Ecklin found a balance in the hands of the executor, and under the will of the testatrix complainant and his sister were entitled to have that balance in equal shares. Until the executor paid complainant, he was trustee of a continuing trust for complainant's benefit. It has been held that in such a situation the statute or implication of limitations will not bar a suit for an accounting. Stevenson v. Markley, 72 N.J. Eq. 686; affirmed, 73 N.J. Eq. 731.
The will of Elizabeth Ecklin appointed Henry J. Melosh co-executor with his brother William, but Henry renounced his right and he testified that his reason was William's refusal to open an executors' joint bank account together with William's statement that he intended to use funds of the estate for his personal investment, even if he would be chargeable with compound interest thereon. There is no evidence that William ever opened a separate bank account for the estate or kept regular books of debit and credit therefor. After William's death a memorandum book and other papers were found in his desk at his place of business. On the cover of *Page 492 
the book, in William's handwriting, are the words "Estate of Charles R. Ecklin dec." and "Estate of Elizabeth Ecklin dec." All the many entries therein are in William's handwriting and all refer to said estates. A page bears the heading, "Rudy's Estate" and thereunder are several entries, the latest of which is dated July 1st, 1912, evidencing that up to that time William still held complainant's share in trust. Complainant attained his majority July 23d 1914, and since no guardian for him had been appointed, it is a fair assumption that complainant's estate had not been paid to or for him prior to his majority. No release, receipt or other evidence of payment thereafter made has been produced from among William's papers and of the many paid checks drawn by William after that date and found among his effects (some six thousand were produced in court), none show payment to complainant of any sum approximating or totaling the amount to which he was entitled. Among William's effects after his death were three mortgages in the name of the estate of Elizabeth Ecklin, for a total of $9,275.
Complainant testified he never knew he was a beneficiary under his grandmother's will until his uncle Henry so informed him a week or two after his father's death. Under the Evidence act it was deemed that complainant was not a competent witness in this suit to testify specifically that he never received his share of the Ecklin estate in his father's lifetime, but the necessary inference from his testimony that he had no knowledge of his rights, is that he had received nothing. When the will of Elizabeth Ecklin was probated, complainant was four years old, being too young then to have known that he was a beneficiary thereunder. His mother had died two years previously and he lived with his father and the defendant (his father's second wife) until he (complainant) married October 4th, 1922, and thereafter he lived in a house owned by his father, rent free. Henry J. Melosh testified that his brother William told him he did not want complainant to know of his interest in the Ecklin estate because he feared complainant would not manage it properly and that he (Henry) had not told complainant of such interest until after William's death, although he (Henry) *Page 493 
knew his brother had mingled complainant's estate money with his own and was speculating therewith and although Henry had charged his brother in 1909 with seeking to defraud complainant and his sister in connection with this estate. Complainant's sister, Mrs. Phair, testified that her father told her of complainant's interest in the Ecklin estate in or about 1903 and also told her not to speak of it, as he was taking care of it and that if she mentioned it to anyone, he would not leave her a penny. She further testified she had never told complainant of his interest, although they were on friendly terms and saw each other frequently. Under the will of William F. Melosh the defendant and her daughter share equally with complainant and his sister in the residue of William's estate and the allowance of complainant's claim will reduce such residue materially. Neither defendant nor her daughter were called as witnesses to testify to any fact or circumstance which might show that prior to William's death, complainant had knowledge of his interest in the Ecklin estate.
Henry J. Melosh testified that in 1897 William's property consisted of a dwelling house on which there was a $2,200 mortgage and about $1,000 in personalty and that his estate now amounts to about $167,000. He also testified that in 1897 William told him he had used estate funds with which to buy various stocks and had made considerable profit, among which was a profit of $22,000 in United States Steel Corporation stock. If Henry is correct in his recollection of the date his brother told of his stock purchases, it would seem he is wrong in his recollection that one of the stocks then purchased was United States Steel Corporation, because in Berger v. United States Steel Corp.,63 N.J. Eq. 809, our court of errors and appeals said that corporation was organized in February 1901. William had been a partner for many years in a firm dealing in nautical instruments and he is not shown to have had any income from other sources. Complainant is (and has been since he was nineteen years of age), employed by the same firm as sort of a messenger carrying nautical instruments from and to the store and ships, his wages at the present time being $31.68 per week. The memorandum *Page 494 
book to which I have referred kept by William, shows under the heading "Rudy's Estate" that that estate amounted to $12,731.92 July 1st, 1910, and since entries in that book show that William charged himself with six per cent. interest compounded semi-annually, the sum to which complainant would have been entitled on reaching his majority July 23d 1914, or subsequently, would have been an important amount and would be reflected in his style of living, but I would point out that there is no evidence to show that complainant at any time possessed any assets of his own.
I conclude that complainant's right of action for his legacy accrued when he became of age and that the evidence I have recited is sufficient to rebut a presumption of payment prior to, or thereafter and therefore the statute of limitations should not be applied by analogy. I also conclude that such evidence is sufficient to overcome the charge of laches against complainant.Holzer v. Thomas, 69 N.J. Eq. 515; Stevenson v. Markley,supra; Scheel v. Jacobson, supra; Giehrach v. Rupp, supra.
4. For defendant it is claimed that if any sum is found due complainant from the estate of William F. Melosh, allowance should be made for money paid to and expenditures made on behalf of complainant by his father in his lifetime. This claim has reference to small sums paid by the father to complainant from time to time, some of which are shown by the father's paid checks, and to the occupancy without rent by complainant since his marriage, of a dwelling house owned by his father. Henry J. Melosh testified that complainant told him that his father gave him (complainant) $10 per week in or about 1934 or 1935 and then stopped such payments. There is no evidence that such sums as the father may have given his son or the father's permission to occupy the house, were acts performed by the father on account of the trust fund held by him. If they were, they were acknowledgments of the existence of the trust and if continued as late as 1934 or 1935, or up to the father's death, they would certainly dispose of defendant's defenses of statute of limitations and laches. If they were not advances on account of the trust, accepted as such by the son, they must be regarded as mere *Page 495 
gifts by the father to the son. Jones v. Haines, 79 N.J. Eq. 110.
5. The decree of the orphans court of December 13th, 1901, determined the net estate of Elizabeth Ecklin to be $8,071.24, of which complainant was entitled to one-half, or $4,035.62.
There were found in the desk of William F. Melosh after his death, beside his memorandum book, various papers marked in evidence as exhibits. Exhibit C-4 is typewritten, dated January 1st, 1909, and headed "Statement of the Estates of Charles R. and Elizabeth Ecklin, deceased, William F. Melosh, Executor." It shows that the executor had received up to July 23d 1897, a total of $14,784.50, out of which he had expended $1,274.34, and many of the items of expenditure appear in the account he filed in the orphans court in 1901. Why that exhibit shows some $5,000 more of receipts than William F. Melosh reported in his inventory of the estate of Elizabeth Ecklin filed September 10th, 1897, is not apparent, unless we accept the recollection of Henry J. Melosh that his brother told him he had collected $4,000 more from Marcotte Co. than he had charged himself in the inventory.
Exhibit C-5, also typewritten, carries forward the totals of receipts and disbursements of Exhibit C-4 and shows a deduction of $1,219.69 for executor's fees, leaving a balance of $12,290.46 as of January 1st, 1909. That exhibit also shows other items of receipts, as well as deductions for additional executor's fees and states "Total amount of estate Jan. 1/09, $24,037.18."
Exhibit C-6 is a paper in the handwriting of William F. Melosh. It shows receipts by him of the same items as in ExhibitC-4 (except one) for a total of $14,307.80.
Exhibits C-7 and C-8 are typewritten papers which appear to be duplicates and on Exhibit C-7 are figures in the handwriting of William F. Melosh. Those two exhibits start with the item of $14,307.80 shown on Exhibit C-6 and state the total estate to be $23,828.96 as of January 1st, 1909. Complainant's share of that total would be $11,914.48, or $104.11 less than the amount of $12,018.59, which is stated in the memorandum book to be "Rudy's Estate" as of January 1st, *Page 496 
1909. The said amount shown in the memorandum book is one-half of the total estate shown in Exhibit C-5. To the figure of $12,018.59 in the memorandum book items are added therein including compound interest, and the book shows as of July 10th, 1910, $12,731.92 as "Rudy's Estate."
How complainant's estate could increase from $4,035.62 in 1901 to $12,731.92 in 1910 is explained by the testimony of Henry J. Melosh in relating a conversation with his brother, wherein William said he intended to use the Ecklin estate in stock speculations. Henry may have been mistaken as to the date of such conversation but the exhibits referred to certainly tend to corroborate his testimony that William made such statement. The increase may be accounted for also by the allowance by William F. Melosh of compound interest on the estate in his hands for the years he used it.
6. From the testimony and exhibits I have reached the conclusion that on and after July 10th, 1910, William F. Melosh held $12,731.92 in trust for complainant and that complainant is entitled to have that sum paid to him out of the estate of said trustee. For the complainant it is contended that compound interest at six per cent. should be added, but I cannot agree with that contention. According to the testimony of Henry J. Melosh, the trustee said he was willing to pay such interest for the use of complainant's estate and the exhibits disclose that for a time he so penalized himself, but there is nothing before me to show that after July, 1910, he continued to use the estate for his own profit and if he did not, his liability for compound interest ended and any interest to be recovered by complainant would be by way of damages. I think complainant is entitled only to be made good for the interest or income it can fairly be said William F. Melosh might have realized had he invested and kept invested the sum he had in hand in 1910. Jones v. Haines,supra; Backus v. Crane, 87 N.J. Eq. 229. Considering the uncertain present values of and income returns from securities which were deemed to be safe in and after that year, it is difficult to say what might have been gained for complainant's estate by way of income up to the present time, or what the estate might be worth to-day had it been invested in legal *Page 497 
securities. The trustee might have deposited it in a savings bank, in which event four per cent. interest compounded could have been earned for a time, but it is common knowledge that for several years last past, no such rate of interest has been paid by savings banks. Under the circumstances I feel it will be doing equity to allow complainant simple interest at four per cent.
A decree will be advised adjudging that complainant has a valid claim against the estate of William F. Melosh for $12,731.92 with interest thereon at four per cent. from July 10th, 1910.