The will of Charles Ecklin was admitted to probate by the surrogate of Hudson county in or about September, 1896, and William F. Melosh qualified as executor thereunder. The testator left his entire estate to his wife Elizabeth Ecklin and she died a few months later leaving a will probated before said surrogate April 20th, 1897, under which said William F. Melosh qualified as executor and by which her estate passed to her grandchildren, Elizabeth Melosh, now Phair (the complainant), and Rudolph C. Melosh, children of William F. Melosh. November 7th, 1901, Melosh, as executor of Elizabeth Ecklin, filed his account in the Hudson orphans court wherein he charged himself with $9,065.78 received from himself as executor of Charles R. Ecklin and with other items, and on December 13th, 1901, a decree of said court was entered allowing the account and adjudging that said executor had $8,071.24 in his hands to be disposed of according to law. Under the terms of the will of Elizabeth Ecklin that balance belonged to the executor's two children Elizabeth and Rudolph, equally.
William F. Melosh died October 18th, 1937, leaving a will admitted to probate in Hudson county, under which letters testamentary were granted to his widow, Louise W. Melosh, and his brother, Henry J. Melosh. Complainant brings this suit by bill filed August 23d 1938, against her father's executors, charging that her father never paid her any part of the money to which she was entitled from the estate of Elizabeth Ecklin and alleging that he mingled complainant's share of said estate with his own funds and invested the same for his own benefit and praying that the defendants account to her *Page 499 
for her share of said estate, or for the profits realized by her father from his use of complainant's funds. Defense to the suit is made by Louise W. Melosh, executrix, who, for the purpose of convenience, will be referred to hereinafter as the defendant. Her co-executor concedes that there should be discovery of and accounting for the assets of the estate of Elizabeth Ecklin which came to the hands of his testator and he joins in complainant's prayer that this court decree the sum due complainant from the estate of William F. Melosh.
Rudolph C. Melosh, son of William F. Melosh, also brought suit in this court to recover his share of the estate of Elizabeth Ecklin and that suit was heard first. Counsel for all parties herein have stipulated that the testimony taken and the exhibits admitted in the other cause, be admitted in this cause with the same force and effect as if actually taken and admitted herein, provided that objections to the admissibility of said testimony on the trial of the other cause shall be considered as made herein and that any party hereto may object to the admissibility of said testimony and any of said exhibits.
Complainant was born in 1885 and when the decree was entered determining the amount in the hands of William F. Melosh, executor of Elizabeth Ecklin, complainant was sixteen years old. No guardian was appointed for her and no record of payment to her appears in the matter of said estate. She became of full age in 1906 but up to May 18th, 1909, no settlement had been made with her for her share of said estate, because on the latter date she entered into a trust agreement in triplicate, in which her father, as executor of the estate of Charles R. Ecklin and Elizabeth Ecklin, is the party of the first part and she is party of the second part. That agreement recites that under the will of Elizabeth Ecklin the estate of that testatrix passed to complainant and her brother and that the intention of the trust agreement is to keep intact complainant's portion of the estate and that Melosh is ready to settle and determine the amount due complainant. The agreement provides that Melosh will render a true statement of said estate; that complainant will release him as executor for the amount due her as shown by such statement; that *Page 500 
until such release is signed, the agreement shall not be considered as payment of the money due her; that complainant consents to the creation of a trust estate, whether such release has been signed or not; that after the date of the agreement, the sum due complainant as specified in the aforesaid statement shall be divided into two parts and one part paid to complainant and the other invested by Melosh as trustee for complainant on bond and mortgage, the interest whereon shall be paid complainant as received, or at least semi-annually and that the trust fund and agreement shall terminate when complainant arrives at the age of thirty-five.
Complainant is barred by the Evidence act from testifying in this cause as to any transaction with or statement by William F. Melosh concerning his administration of the estate of Elizabeth Ecklin and such testimony of that nature as she gave in the cause wherein her brother was complainant, will be disregarded in this cause. The evidence shows that as early as 1903 she was aware of her interest in said estate and that her father held such interest, and of course she knew he still held it when she executed the trust agreement in 1909, yet she waited forty-one years after her grandmother's death; thirty-five years after she knew she was entitled to a share in her grandmother's estate; thirty-two years after she became of age and twenty-nine years after she executed the trust agreement, before asserting her rights.
It may be questioned whether the trust agreement is anything more than an acknowledgment by William F. Melosh that he had not accounted as executor under the will of Elizabeth Ecklin for complainant's share of the estate and an arrangement or plan for payment to complainant of the sum for which he was accountable, for he is the party of the first part to said agreement as executor of Elizabeth Ecklin and the agreement recites that it is the intention of the parties thereto to keep intact complainant's share of said estate; that as such executor he will render a statement thereof, whereupon complainant will release him and that until such release is signed, the agreement should not be considered as payment of the money due her from said estate. It may be considered that if Melosh did not render the required statement and if *Page 501 
complainant did not receive any money from him and did not release him from his liability as executor, he continued as executor to hold complainant's share of the estate and in that view of the situation, complainant has waited thirty-two years after arriving at full age before seeking to compel payment of her distributive share of the estate. However, the trust agreement further provides that complainant consents to the creation of a trust estate, whether a release has been signed or not and the parties to this cause seem to agree that by the agreement complainant abandoned her right to compel her father to account as executor and trustee under the will of Elizabeth Ecklin and consented that the funds he held belonging to her, should constitute a new trust and that he should be accountable therefor pursuant to the terms of the trust agreement.
The defendant urges that because of complainant's long delay in seeking enforcement of her rights under the trust agreement, the statute of limitations is a bar to recovery. That statute does not apply, in terms, to courts of equity but those courts act in analogy to the statute and hold that presumption of payment of a legacy or trust fund arises in equity after the expiration of twenty years from the accrual of the right to receive it, unless circumstances are shown which will rebut such presumption.Congregational Church, c., v. Benedict, 59 N.J. Eq. 136;affirmed, 62 N.J. Eq. 812; Mathews v. Kelly, 70 N.J. Eq. 796.
The trust agreement contemplated an immediate statement by William F. Melosh showing the amount of the fund held by him and also immediate payment to complainant of one-half of such amount; it also contemplated semi-annual payments of interest to her on the remaining half which was to be held in trust. If Melosh actually failed to render such statement and to pay complainant one-half of the money he owed her and failed to make the first semi-annual payment of interest on the trust fund, complainant had the right to proceed against him in 1909 but she waited twenty-nine years before doing so. A right of action accrued to her for each semi-annual payment of interest that fell due after 1909, so that for all such interest payments due to 1918, she had a *Page 502 
right of action twenty years before filing her bill of complaint herein; hence all payments provided for by the trust agreement must be presumed to have been made complainant up to and including 1918, unless the presumption is rebutted by some evidence in the case. But the case is barren of any such evidence, other than the testimony of complainant's husband that Melosh said to him, five months before he died when seriously ill and in great pain, "the end is pretty near but don't worry. I took care of Elsie in my will. I think she will be better off by the way I have the will set now than if I had given her the entire Ecklin estate," and when the witness asked Melosh what he meant about the Ecklin estate, he said, "Oh, skip it." Considering the interest of this witness in the outcome of this suit, the fact that he also testified that Melosh had never discussed his financial affairs with the witness and the uncertain meaning of the words quoted, I cannot accept such testimony as sufficient evidence to rebut the presumption that complainant had received payment or satisfaction for all money to which she was entitled under the trust agreement up to 1918.
The defendant also contends that because of complainant's gross laches, she is not entitled to any of the relief she seeks and this contention applies to all money which she claims under the trust agreement. The rule concerning laches as laid down by our court of errors and appeals may be stated as follows: Where one is aware of his rights and fails to assert them promptly after knowledge of their invasion, and the person against whom the rights could have been asserted might have a valid defense thereto but is dead, and the evidence of such defense may have been lost by great lapse of time and it is thus rendered difficult to decide the justice of the rights so tardily asserted, the long delay not explained satisfactorily, amounts to such laches as will bar the relief sought (Stout v. Seabrook'sEx'rs, 30 N.J. Eq. 187; affirmed, 32 N.J. Eq. 826; McCartin v.Traphagen's Adm'r, 43 N.J. Eq. 323; affirmed, 45 N.J. Eq. 265;Hall v. Otterson, 52 N.J. Eq. 522; affirmed, 53 N.J. Eq. 695;Lutjen v. Lutjen, 64 N.J. Eq. 773; Soper v. Cisco, 85 N.J. Eq. 165; Reeves v. Weber, 111 N.J. Eq. 454) and where there has been gross *Page 503 
laches in enforcing a known right, or long acquiescence in an alleged breach of trust, courts of equity will even in a case of an express trust, refuse relief on the ground of lapse of time.Starkey v. Fox, 52 N.J. Eq. 758; affirmed, 53 N.J. Eq. 239.
The second half of the money due complainant which was to be held as a trust fund, was payable to complainant in 1920 when she reached the age of thirty-five, at which time the trust agreement by its terms terminated. If she did not receive that corpus
then, or the interest thereon from 1918 to 1920, she slept on her rights eighteen years before filing the bill herein and such laches unexplained, applicable also to all payments due her prior to 1918, is sufficient under the circumstances here present, to bar the relief she seeks. Her father, apparently the only person who had knowledge of the trust transaction, is dead and if he actually paid complainant all moneys due her under the trust agreement, such records, receipts or other evidence as would establish payment definitely may well be thought to have been lost or destroyed in the long period which has elapsed since the final payment became due complainant under the trust agreement. There is no evidence in the case to explain complainant's delay in enforcing her rights. It is true that Henry J. Melosh testified that his brother William told him in 1906 that if complainant made any fuss over the Ecklin estate he would not leave her a cent in his will, but he also testified that he never told complainant of such threat. It is also true that said witness testified that his brother told him in 1917 that he had settled with complainant.
There is some evidence in the case that Melosh did settle with complainant. After Melosh's death a memorandum book and other papers were found in his desk at his place of business and were marked in evidence as Exhibits C-3 to 8, inclusive, in the Rudolph C. Melosh suit. On the cover of the book, in Melosh's handwriting, are the words "Estate of Charles R. Ecklin dec." and "Estate of Elizabeth Ecklin dec." All the many entries therein are in Melosh's handwriting and all refer to said estates. A page therein bears the heading "Elsie Estate" and thereunder are the following entries: *Page 504 
 Jan. '09 ......................... $12,018.59
 cash advanced ........... 300.00
 __________
 total estate ............ $11,718.59
 " '09 Union dime bank ......... 349.02
 __________
 3% on this .............. $11,369.57
 Cowan mort. ............. 5,750.00
 __________
 in ex. hands Jan. '10 ... $5,619.57

Then follow various entries under date of subsequent years, some of which record semi-annual interest at three per cent. on $11,369.57; also an entry of "2000 cash," as a deduction and thereafter semi-annual entries dated from January 3d 1911, to July 3d 1913, of "6 month interest paid," for amounts which equal three per cent. interest on $9,369.57, followed by a final entry "July 10/13 in full $2,119.57." The papers found with the book, are statements of account of the Ecklin estates as of January, 1909, and show how the above figure of $12,018.59 was arrived at, and it is probable that such statements were prepared in anticipation of the execution of the trust agreement, which was first discussed in February, 1909. Although the book entries are not clearly understandable and cannot be accepted as conclusive, and perhaps not even presumptive evidence of an actual settlement of the trust by Melosh, yet they may be his memoranda of payments to complainant, which, by his testimony and evidence he might be able to produce were he alive, he could prove to be a true record of such payments. Such possibility demonstrates the wisdom of the application of the rule of presumptive payment as against one who delays many years without satisfactory explanation, in asserting a claim known to exist.
I conclude that complainant has failed to establish her claim that her share of the estate of Elizabeth Ecklin has not been paid to her and that her bill should be dismissed. *Page 505