**BEULAH BROWN McCALL, Plaintiff**

**v.**

**ARTHUR BROWN, et al., Defendants**

Civil No. 524-1972

District Court of the Virgin Islands

Div. of St. Croix

April 21, 1975

LEROY A. MERCER of counsel, Christiansted, St. Croix, V.I.

ISHERWOOD, COLIANNI, ALKON & BARNARD, ESQS. (JAMES H. ISHERWOOD of counsel), Christiansted, St. Croix, V.I.

J. MICHAEL SPENCER of counsel, Frederiksted, St. Croix, V.I.

YOUNG, *District Judge*

### MEMORANDUM OPINION AND JUDGMENT

A court trial was conducted in this "Action to Quiet Title" on March 14, 1975. In her complaint, plaintiff claims full title to approximately 7.85 acres of real property in St. Croix, originally known as Plot 42-A of the Northside Homestead Development (Estate Belvedere).

The evidence adduced at trial revealed that in 1932 Arthur Brown, plaintiff's father and a named defendant in this suit, contracted to purchase the foregoing property from the St. Croix Labor Union. By September 27, 1950, the final payment on said land had been made, and a deed of conveyance was executed by the Labor Union to "Arthur Brown in trust for daughter Beulah M. Brown her heirs and assigns in fee simple forever". At the time of the conveyance and up until 1969, plaintiff, the ostensible grantee of the property, resided with her mother in New York City, making only sporadic visits to St. Croix in the interim period.

Following the execution in New York of a document dated March 24, 1953, wherein plaintiff purportedly designated defendant Arthur Brown her attorney-in-fact for the conveyance of a subdivision of Plot 42-A, consisting of approximately 3.77 acres, said subdivision was conveyed by Arthur Brown to one Helen Bodine on April 2, 1953. Sometime in 1969, defendant Arthur Brown executed two deeds of gift: one, granting approximately nine-tenths of an acre to plaintiff McCall; and the other granting about nine-tenths of an acre to Karen Acoy, another daughter of

Arthur Brown and a named defendant in the instant action. At trial, defendant Arthur Brown noted that he intended to leave the remaining portion of land on which he presently resides to a third daughter, Christianita, upon his death.

Following the 1969 grant to plaintiff, she returned to St. Croix, obtained a construction loan and built a house on the property. The following year plaintiff's mother moved into the new house and died a short time later.

■ My initial inquiry must focus on the nature of the conveyance of July 27, 1950. On its face, the deed purports to create a trust relationship between defendant Brown, as settlor and trustee, and plaintiff McCall, as beneficiary. But,

"the mere fact that these words ['trust' or 'trustee'] are used does not necessarily indicate an intention to create a trust. The question in each case is whether the settlor manifested an intention . . . to impose upon himself . . . equitable duties to deal with the property for the benefit of another person."

1 Scott, Trusts § 24, at 192 (3d Ed. 1967). Plaintiff's testimony, if accepted as credible, would adequately explain why Arthur Brown would take the land in trust for his oldest daughter. She stated that prior to 1950, she and her mother forwarded money from New York City to her father in St. Croix to cover both the mortgage payments and taxes on the property; and that as a condition for the use of said money, her father was to take the land in plaintiff's name. At trial, however, plaintiff was unable to produce any correspondence between her father and mother in which either the trust nature of the conveyance or the money allegedly sent from New York was discussed.

■ On the other hand, in light of the seemingly unequivocal declaration in the deed that defendant Brown took the property as trustee, I believe that he bears a heavy burden in attempting to establish that he intended to take the land in his own right. Preliminarily, it is important to note

711

that Arthur Brown, a man of modest education who grew sugar cane and raised goats and cows to scratch out a living, accepted the 1950 deed without the benefit of legal representation. Consequently, Arthur Brown may not have appreciated the nature of the grant. Indeed, he testified that he understood that by placing on the deed the name of his oldest child, who would be responsible for the family upon his death, he was providing for the devise of his property to all his issue.

Moreover, the preponderance of the credible evidence presented at trial supports findings that defendant himself paid for the land and has treated the land as his own from 1932 to the present. By the terms of the standard agreement entered into between an individual homesteader and the St. Croix Labor Union, the prospective landowner was given a plot of land on which to farm, grow cane, or raise livestock. From the proceeds of each harvest, a given percentage was retained by the Virgin Islands Corporation and deducted from the purchase price of the land. Mr. Brown's testimony that he paid off the land in accordance with such an agreement was substantially corroborated by the testimony of Rupert Johannes, defendant's nephew who lives on a nearby tract of land. Johannes further noted that Arthur Brown always conducted himself as the owner of the property and has never known plaintiff to claim an interest in the land.

At trial, plaintiff suggested that the preparation and execution of the power-of-attorney in 1953 constituted an implicit acknowledgement by Arthur Brown that his daughter Beulah was the true owner of Plot 42-A. Had Arthur Brown actively participated in the processing of this document, I would accept plaintiff's suggestion. However, Brown testified that he was totally unaware of the existence of this document. In light of the fact that Brown was not represented by his own counsel in this transaction,

it is entirely conceivable that Mrs. Bodine's attorney forwarded the requisite document to New York City for plaintiff's signature without conferring with defendant Brown prior thereto.

 Even without reforming the 1950 deed to reflect Arthur Brown's absolute ownership of the property, I would nonetheless find that plaintiff was barred by laches from claiming any beneficial interest in the land arising out of that conveyance. Generally, a beneficiary can be guilty of laches if he does not take affirmative steps to enforce the trust *only* after the trustee has repudiated the trust in some manner. Whereas it is doubtful that Arthur Brown ever knew of any trust relationship between himself and his daughter, he cannot be said to have repudiated that relationship in any way. An exception to the repudiation requirement, however, has been recognized in cases in which there is doubt as to whether a trust had ever been created. In such cases, courts have found that where a beneficiary has long delayed in asserting his rights and the circumstances are such that it has become difficult to prove whether or not there ever was a trust, the beneficiary is precluded by laches from maintaining a suit to enforce the trust. See Feeney v. Feeney, 140 N.E.2d 642, 647–48 (Mass. 1957); Phair v. Melosh, 6 A.2d 491, 494–95 (N.J.Ch. 1939).

It is uncontroverted that from 1950 to the commencement of the instant lawsuit in 1972, plaintiff made no effort to enforce her rights as beneficiary under the purported trust agreement. This delay was accompanied by circumstances which could well have prejudiced the rights of Arthur Brown. Plaintiff's mother, who died in 1970, was the only person in a position to confirm or disaffirm plaintiff's testimony regarding the origin of the payments on the property. Important documentary evidence, consisting of correspondence between Mr. and Mrs. Brown in which

713

said payments were discussed, has disappeared. Finally, rights of third parties have since attached to the land in question. The delay of twenty-two years, plus the concomitant inaccessibility of relevant evidence, requires a determination of laches in this case.

As the absolute owner of Plot 42-A in 1950, Arthur Brown could validly reconvey a subdivision thereof in 1953 without the prior execution by his daughter Beulah of the power-of-attorney. The subsequent grants to Beulah and Karen in 1969 were likewise valid conveyances. I must thus conclude that the present ownership of Plots 42-A, 42-B, 42-C and 42-D of what is today Estate LaVallee, as shown on Department of Public Works Subdivision Map dated July 5, 1966, must remain undisturbed.

## JUDGMENT

In accordance with the foregoing Memorandum Opinion and the reasons set forth therein, it is hereby ORDERED, ADJUDGED and DECREED:

1. That defendant ARTHUR BROWN be deemed the rightful owner of Plot 42-A, consisting of 0.6010 acre, and Plot 42-B, consisting of 0.25 acre, of Estate LaVallee, as shown on Department of Public Works Subdivision Map dated July 5, 1966; said plots to be free of all liens and encumbrances except those created by defendant ARTHUR BROWN himself;

2. That defendant KAREN ACOY be deemed the rightful owner of Plot 42-D, consisting of 0.9433 acre, of Estate LaVallee, as shown on Department of Public Works Subdivision Map dated July 5, 1966; said plot to be free of all liens and encumbrances except those created by defendant KAREN ACOY herself; and

3. That plaintiff BEULAH BROWN McCALL be deemed the rightful owner of Plot 42-C, consisting of 0.9508

acre, of Estate LaVallee, as shown on Department of Public Works Subdivision Map dated July 5, 1966; said plot to be free of all liens and encumbrances except those created by plaintiff BEULAH BROWN McCALL herself.