747 A.2d 327 (2000)
329 N.J. Super. 249
In the Matter of the ESTATE OF Herbert P. LASH, deceased.
Fireman's Fund Insurance Company, Plaintiff-Respondent,
v.
Manuel Lopez, Jr., Cheryl Lopez, his wife; Donald J. Meliado; Prudential-Bache Securities, Incorporated; L & L Associates; Lopez, Lopez & Cringloi; Louis H. Miller; William R. Deni; and Jack Lance,[1] Defendants, and
Estate of Hildegard Lash, deceased, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 2000.
Decided March 22, 2000.
*329 B. Paul Katz of the Florida Bar, admitted pro hac vice, for defendant-appellant (Kraemer, Burns, Mytelka, Lovell & Kulka, attorneys; Wayne D. Greenfeder, Springfield, and Mr. Katz, on the brief).
Timothy J. Korzun, Pennington, for plaintiff-respondent (Sheak & Korzun, attorneys; Deborah I. Hollander, J. Charles Sheak and Mr. Korzun, on the brief).
Before Judges D'ANNUNZIO, NEWMAN and FALL.
*328 The opinion of the court was delivered by FALL, J.A.D.
This appeal involves a determination of whether attorney fees incurred in litigation by the beneficiary of an estate seeking recovery of assets lost due to the breach of trust by an estate administrator are surchargeable against the administration bond. We conclude there is no authority in this State to surcharge counsel fees against the administration bond.
We are also asked to decide whether interest should be allowed on the amount of the stipulated surcharges paid under the bond and, if so, at what rate and from what date. We hold that lost interest is a component of the damages claim of the estate and may be assessed against the stipulated surcharges and paid under the administration bond. Here, we conclude the trial judge did not abuse his discretion in applying the simple interest rates embodied in R. 4:42-11. We also rule that interest shall be calculated from the date of each defalcation.
The issues in this appeal arise in the context of the following factual and procedural history. Herbert P. Lash died intestate in New Jersey on April 23, 1987, leaving his mother, Hildegard Lash, as his sole heir. Four days after his death, Hildegard Lash granted a power of attorney to defendant, Manuel Lopez, Jr. On May 13, 1987, Hildegard Lash renounced her right to administration on the estate of her son and, on June 17, 1987, Lopez was appointed by the Passaic County surrogate as administrator on Herbert Lash's estate. Fireman's Fund Insurance Company was the surety on an $800,000 surety bond required of Lopez.
*330 On August 1, 1992, Hildegard Lash, living in Florida, instituted suit against Lopez and his wife, defendant Cheryl Lopez, in the Florida courts alleging Lopez improperly used the power of attorney to embezzle or waste much of the assets of both the Estate of Herbert Lash and the separate assets of Hildegard Lash; failed to distribute the assets of the estate; and sought an accounting.
Fireman's Fund was dismissed from the Florida action by order entered on December 3, 1992, for lack of subject-matter jurisdiction. At some point thereafter, the Florida court indicated that the actual basis for dismissal as to Fireman's Fund was lack of personal jurisdiction.
Hildegard Lash obtained a judgment against Lopez in the Florida action for $800,000 based upon Lopez's breach of the administrator's bond.
On January 29, 1993, Fireman's Fund instituted suit in New Jersey against Manuel Lopez, Jr., Cheryl S. Lopez, his wife, Hildegard Lash, and Donald J. Meliado, an attorney retained by Manuel Lopez, Jr. to represent the Estate of Herbert P. Lash, by filing a verified complaint and obtaining an order to show cause imposing restraints. The complaint alleged Lopez breached his fiduciary duty to the Estate of Herbert Lash and misapplied or misappropriated the estate's assets. Hildegard Lash was named a defendant to force her to assert all claims she had against Fireman's Fund or Lopez and his wife.
Hildegard Lash died on December 19, 1993, leaving no heirs, and bequeathing all her assets to her personal representatives to distribute to charities benefitting orphans. B. Paul Katz, appellant's counsel, and Barnett Banks Trust Company were named co-personal representatives of the Estate of Hildegard Lash. The Bank subsequently renounced its right to act and on January 27, 1994, a Florida probate court appointed Katz as the sole personal representative of the estate.
The Estate of Hildegard Lash was unable to recover any of the $800,000 Florida judgment from Lopez and sought that amount from Fireman's Fund. The Estate also requested Fireman's Fund be "surcharged over and above the amount of the bond for the cost of attorney fees incurred by Hildegard Lash to protect her interest herein."
In July 1996, the parties to this appeal entered into a formal stipulation, agreeing Lopez, as principal under the administration bond, had breached that bond, resulting in surcharges in the amount of $337,168.60. Of that amount, $284,481.10 had been deposited with Ed Butrym, successor administrator of the Estate of Herbert Lash. The remaining $52,687.50, identified as "the Meliado surcharges," were later recovered. The parties further agreed interest chargeable to Fireman's Fund, as surety, would cease to accrue upon delivery of the money to Butrym. Additionally, the parties agreed:
This stipulation does not prevent or prohibit additional surcharges from being asserted by any party hereto, nor does it preclude the Surety from defending any claim for further surcharge.
On July 30, 1996, an order was entered approving and incorporating the terms of the stipulation.
The claims against all other defendants were either resolved, dismissed, or defaulted.
The case went to trial on all remaining issues on January 12 and 13, 1998. On the second day of trial, the parties stipulated to the resolution of all issues except for attorney fees and costs incurred by the Estate of Hildegard Lash in prosecuting its claims against Fireman's Fund and the bond, and the amount of interest on the monies wasted and taken by Lopez.
The judge ruled that because the claims had essentially been settled, there would be no pre- or post-judgment interest award; however, the Estate of Hildegard Lash was entitled to interest on the monies *331 it was to receive from Fireman's Fund based upon the defalcation by Lopez. The interest rate, which was to be agreed upon by the parties based upon the guidelines contained in R. 4:42-11, would be calculated as simple interest once counsel agreed which particular rates applied to each item. The judge reserved decision on the issue of counsel fees.
On October 21, 1998, the trial judge entered a final judgment, in the form of a written opinion, imposing surcharges on the administration bond. The judge permitted the accrual of interest on the amount surcharged from January 1993, when the New Jersey complaint was filed, and relied upon a spreadsheet that calculated the interest based upon certain percentages, in determining the amount of interest on each item misappropriated by Lopez.[2]
The final judgment awarded attorney fees and costs in the amount of $147,231.96 to Katz and $58,643.30 to New Jersey counsel for the Estate of Hildegard Lash, to be paid by the Estate of Herbert P. Lash. According to the judge, the estate, not Fireman's Fund, was responsible for the costs and fees because attorney fees were not a surcharge under the bond. Citing to Fengya v. Fengya, 156 N.J.Super. 340, 383 A.2d 1170 (App.Div.1978), the judge reasoned the bond was not a liability or indemnity policy within R. 4:42-9(a)(6); hence, there was no authority for imposition of attorney fees.
On appeal, the Estate of Hildegard Lash presents the following arguments for our consideration:
POINT I
REASONABLE ATTORNEY'S FEES AND COSTS INCURRED BY A BENEFICIARY IN SUCCESSFULLY PROSECUTING AN ACTION TO SURCHARGE AN ADMINISTRATION BOND SHOULD BE RECOVERABLE UNDER THE BOND.
A. An Award Of Counsel Fees Against The Embezzling Administrator And His Surety Should Have Been Awarded Because Counsel Fees Are A Traditional Element Of Damages In A Surcharge Action.
B. Alternatively, An Award Of Counsel Fees Should Have Been Permitted Against The Embezzling Administrator For The Fees Incurred In Pursuing This Action Against The Surety.
C. The Surety Is Responsible For Counsel Fees Because It Is Absolutely Liable For The Default Of The Embezzling Fiduciary.
POINT II
WHEN A BONDED ADMINISTRATOR IS FOUND TO HAVE STOLEN OR WASTED ESTATE ASSETS, HIS SURETY IS RESPONSIBLE NOT ONLY FOR THE PRINCIPAL AMOUNT STOLEN OR WASTED, BUT ALSO FOR THE INTEREST THAT SHOULD HAVE BEEN EARNED BY THE ESTATE ON THE FUNDS BUT FOR THE ACTIONS OF THE ADMINISTRATOR.
A. The Beneficiary Is Entitled To Interest From The Dates Of Default.
B. Interest Should Have Been Awarded At A Commercially Reasonable Rate And As To Those Defaults Involving The Personal Use Of Estate Funds By The Administrator, The Interest Should Be Compounded.
We consider these arguments in the order presented.

*332 I
The Estate of Hildegard Lash argues the judge erred in failing to surcharge the award of attorney fees against the administration bond, contending attorney fees are a traditional element of damages in a surcharge action. Alternatively, the estate argues attorney fees should have been permitted under the rule that entitles a litigant to recover attorney fees as an element of damages in an action with a third party.
We conclude the trial judge properly relied on our holding in Fengya in denying the application for assessment of attorney fees in the form of a surcharge against the administration bond. The general rule in this State is that each party must bear responsibility for its own litigation expenses, including attorney fees. Jugan v. Friedman, 275 N.J.Super. 556, 573, 646 A.2d 1112 (App.Div.), certif. denied, 138 N.J. 271, 649 A.2d 1291 (1994). An award of attorney fees is permissible only if authorized by statute or court rule.
Here, there is no statutory authorization for an award of attorney fees in actions of this type. Moreover, our review of the court rules discloses no basis for such an award. R. 4:42-9(a)(6) authorizes the award of attorney fees in favor of a successful claimant in an action upon either a liability or indemnity policy of insurance. However, a surety bond is not considered either a liability or an indemnity insurance policy. Eagle Fire Protection Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 363-65, 678 A.2d 699 (1996) (holding that R. 4:42-9(a)(6) does not encompass a labor and material payment bond); Fengya, supra, 156 N.J.Super. at 347, 383 A.2d 1170 (holding that R. 4:42-9(a)(6) does not include a guardian's bond).
We are not persuaded by the attempt to distinguish Fengya on the basis that our holding was limited to guardian bonds. As we explained:
The significant thing to note here is that whether it [a liability policy] is called liability or indemnity insurance, the contract is solely between the insured and the insurer wherein the insurer agrees to protect the insured against third-party claims.
On the other hand, the guardian's bond here involved is in effect an insurance guaranty contract made between the insurer and the court to protect the ward's estate against loss resulting from the wrongful acts of the guardian.
[Fengya, supra, 156 N.J.Super. at 345, 383 A.2d 1170.]
Accordingly, it is the nature of a "bond," whatever its type, that removes it from being considered either a liability or indemnity insurance policy, qualifying for consideration of an attorney fees award pursuant to R. 4:42-9(a)(6).
Here, the administration bond was an insurance guaranty contract between Fireman's Fund and the court for the purpose of protecting the Estate of Herbert Lash from loss caused by the wrongful acts of Lopez. We find no distinction between this bond and the bond in Fengya.
The Estate of Hildegard Lash also attempts to distinguish Fengya on the basis that, there, the full penal sum of the bond had already been paid. The holding in Fengya that attorney fees were not allowable under R. 4:42-9(a)(6) in an action against a surety on a guardian's bond was based upon our conclusion that a guardian's bond was not a liability or indemnity policy within the meaning of the rule. Id. at 347, 383 A.2d 1170. Whether the full penal sum of the bond was paid or not had no effect on whether the bond constituted liability or indemnity insurance.
We also conclude there is inadequate support for the argument that, under common law, attorney fees are a traditional element of damages in a surcharge action. Reliance on our holding in Bailey v. Pocaro & Pocaro, 305 N.J.Super. 1, 701 A.2d 916 (App.Div.1997) is misplaced. In Bailey, we observed that the award of attorney fees is an element of damages in a *333 legal malpractice action. Id. at 6, 701 A.2d 916. That case did not involve the issue of whether attorney fees were an element of damages in an action on a surety bond.
The only case directly supporting the Estate's argument is Ordinary v. Connolly, 75 N.J. Eq. 521, 72 A. 363 (Prerog.1909). However, Ordinary predated R. 4:42-9, which was "adopted in response to widespread abuses by courts and attorneys with respect to allowances of counsel fees in Chancery prior to 1948." Fengya, supra, 156 N.J.Super. at 344, 383 A.2d 1170. We conclude the ruling in Ordinary was superseded by the rule.
Citing to Jugan, the Estate also relies upon the common-law exception to the no-fee rule in cases where the commission of a tort proximately causes litigation with someone other than the tortfeasor. Jugan, supra, 275 N.J.Super. at 573, 646 A.2d 1112.
Jugan was a collection action in which the plaintiff sought to recover the punitive damages he had been awarded as part of his medical malpractice claim against the defendant physician. Id. at 559-61, 646 A.2d 1112. When the plaintiff initially attempted to collect the punitive damage award, he discovered defendant had transferred all of his assets to his wife and children. Id. at 560-61, 646 A.2d 1112. The plaintiff then instituted an action against the defendant, his wife, and children, seeking the location of defendant's assets, payment of the punitive damages out of the fraudulently transferred property, and additional damages, interest, and costs. Id. at 561, 646 A.2d 1112.
In Jugan, the trial court awarded the plaintiff $150,000 in unpaid punitive damages from the malpractice award and ordered it collected from the cash surrender value of a life insurance policy the defendant had purchased with the money he received upon liquidating his assets. Id. at 562-63, 569-70, 646 A.2d 1112. The trial court rejected plaintiff's claim that the defendant's interference with the plaintiff's ability to collect upon the original judgment was an independent tort for which plaintiff should have been awarded additional damages, as well as attorney fees and costs. Id. at 563-64, 646 A.2d 1112.
We affirmed the trial court's ruling that plaintiff could satisfy his claims against the defendant from the cash surrender value of the life insurance policy based upon the physician's fraudulent dissipation of his assets. Id. at 570-71, 646 A.2d 1112. We also held that while plaintiff could not recover from defendant the litigation expenses he incurred in establishing defendant had engaged in fraudulent transfers, plaintiff could recover the fees incurred in connection with his action against the third-party recipients of the fraudulently transferred assets. Id. at 573, 646 A.2d 1112. We stated, "if the commission of a tort proximately causes litigation with parties other than the tortfeasor, the plaintiff is entitled to recover damages measured by the expense of that litigation with third parties." Ibid.
We find no support in Jugan for the Estate's claim for an award of counsel fees. In Jugan, we expressly stated the plaintiff could not recover from the defendant-tortfeasor the costs of litigating against the defendant. Applying that ruling here, the Estate is not entitled to recovery of its attorney fees from the defaulting administrator through a surcharge against the surety bond.
We are satisfied the trial judge correctly concluded, as a matter of law, that there is no authority for an award of attorney fees in this matter.

II
The Estate of Hildegard Lash argues the trial court erred in limiting the interest surcharge award to simple interest from the date of filing of the complaint. The Estate contends it is entitled to interest from the dates of Lopez's defaults, computed on a compound basis, rather *334 than using the rates set forth in R. 4:42-11.
According to the Estate, when a fiduciary uses estate funds for unauthorized payments, the interest surcharge is calculated on a simple basis; however, where the fiduciary uses estate funds for his own purposes, the administrator must reimburse the estate the greater of whatever profit he made, or whatever the estate could have reasonably made on the defalcated funds, computed at compound interest, compounded annually.
The Estate argues that reliance by the trial judge upon R. 4:42-11 in setting the interest rate was error because the rule only applies to tort cases.
In awarding interest, the judge relied upon R. 4:42-11 as a guide because all claims arose out of fraud and misappropriation. The judge explained:
I'm going to make it very simple on the interest, no pun intended. I'm going to rule that we're looking at deals with post-judgment interest and pre-judgment interest and, obviously, in this case, we have no judgment. In effect, as of this morning, this case is settled, the case is settled. This Court, to my knowledge, doesn't have to enter judgment.
....
All I'm saying is, technically, I don't think this rule applies to what we're talking about and if I were to follow the rule very straightforward and technically, Mr. Katz wouldn't be entitled to any judgment under this rule.
So there's no post-judgment or pre-judgment interest, but I'm satisfied the Estateand when I say that, Mr. Katz, I'm talking about the Estate of Hildegard Lash is entitled to interest on the monies it is receiving from the bonding company; in this case, Fireman's Fund.
That money is coming to Mr. Katz because of the defalcation of the executor Mr. Lopez and I don't think it makes any difference for this purpose, at least not in my mind, whether we say he was negligent in doing some things, maybe he was negligent in hiring certain lawyers or accountants, or whether he was a plain crooked thief and stole some money which apparently he did. I don't think that makes any difference for the purposes of this interest resolution that I'm about to make.
I am satisfied that because of the defalcation net term of negligence and outright thievery, because of that, the bonding company is paying large sums of moneyI don't know what the total is now, but large sums of money to the Estate and that's money that should have been in the Estate and if it had been in the Estate, it would have earned interest.
However, it would have been interest [invested] by the executor in a simple C.D. and I don't want to get into the investment act and old prudent investment act, I don't think, and its changes. I don't know that it's necessary, but what a reasonable executor would have done with the money and sitting in Probate, I see all sorts of places where money is put other than being placed in a C.D. or bank account.
At any rate, I'm going to allow the interest. I'm going to allow interest, I'm going to follow Rule 4:42-11 as the guidelines for the interest. The Supreme Court through these rules has determined that this is a reasonable return on the money for purposes of the rule having not been paid to the victim of a tort and I accept the Supreme Court determination through this rule that it is a reasonable rate and it includes the amendment in 1996 increasing the rate [by] two percent.
I'm also satisfied to follow the intent of the rule and to make it simple interest. The Supreme Court could have in this rule said compound interest. They said not to because if someone who is a tort victim who sustained their loss and it takes them five years or four years to *335 get a recovery, the insurance company and I say this not in the bad sense, the insurance company had the use of that money for a period of years when it could have been compounded.
Therefore, the victim has been deprived of that money for a number of years when the Court could have compounded that interest, chose not to, but chose to go for simple interest. It's clear I'm following this rule. Not because I feel bound to follow this rule. As I said, there's no judgment here as such, but because I think it's persuasive to the court as there wouldn't be a reasonable rate of return for the conduct of Mr. Lopez.
Although the written order awarding interest states "[i]nterest is controlled by R. 4:42-11," it is clear from the judge's discussion and ruling that he did not technically apply the rule; rather, he used its provisions as a guideline during the exercise of his discretion. The judge applied the equitable principle that a party is entitled to be compensated for lost earnings on a sum of money to which it was entitled but which had been retained by another. See North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 574-75, 730 A.2d 843 (1999); Hudson County Chamber of Commerce v. City of Jersey City, 310 N.J.Super. 208, 221, 708 A.2d 699 (App.Div.1997), aff'd in part, 153 N.J. 254, 708 A.2d 690 (1998). The decision to award or deny pre-judgment interest is within the discretion of the trial judge, Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478, 541 A.2d 1063 (1988), and we "usually will defer to the trial judge's exercise of discretion unless it represents a manifest denial of justice." County of Essex v. Waldman, 244 N.J.Super. 647, 667, 583 A.2d 384 (App.Div.1990), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991).
In an action for breach of a fiduciary duty, the available remedies include "a surcharge in the amount of misappropriated funds plus prejudgment interest." New Jersey Div., Horsemen's Benevolent Protective Ass'n v. New Jersey Racing Comm'n, 251 N.J.Super. 589, 605, 598 A.2d 1243 (App.Div.1991) (action against fiduciary of horsemen fund for mismanagement and misspending fund money). The allowance of interest on surcharges, the rate, and the method of computation are within the judge's discretion. Ditmars v. Camden Trust Co., 10 N.J. 471, 491-92, 92 A.2d 12 (1952); State ex. rel. Matthews v. National Surety Corp., 17 N.J.Super. 137, 141, 85 A.2d 534 (App.Div.), certif. denied, 9 N.J. 287, 88 A.2d 39 (1952).
The discretion, however, "must be exercised equitably in the light of the character of the breach of trust and the degree of fault of the trustee under all the circumstances." Matthews, supra, 17 N.J.Super. at 141, 85 A.2d 534. Though Matthews suggests that under circumstances such as presented here, the calculation of interest on a compound basis is permissible, the decision does not require it. Ibid.
Here, the judge was presented with a case that had been settled. He was not required to impose interest. However, the judge recognized the estate should be compensated for the money it was unable to invest due to the wrongful actions of Lopez. In order to determine that interest, the judge was guided by R. 4:42-11, reasoning this rule applies to tort actions, which include fraud claims. We conclude reliance upon R. 4:42-11 as a guide in setting the interest rate was reasonable and does not constitute an abuse of discretion.
Where we disagree with the judge is the limitation placed on the commencement date for calculation of the simple interest. The judge selected January 1993, the month when the New Jersey complaint was filed, as the commencement date. Although the judge offered no explanation for choice of this date, we conclude he did so because his analysis was based upon assessment of pre-judgment interest in the light of R. 4:42-11.
*336 In this case, we conclude simple interest should be calculated from the date the improper use of the funds was made. Under these circumstances, we view lost interest as an element of the estate's damages claim and therefore calculated on the amounts surcharged under the bond. See Melosh v. Melosh, 125 N.J. Eq. 486, 496, 6 A.2d 472 (Ch.1939); In re Jula, 3 N.J. Misc. 976, 979, 130 A. 733 (Orph.1925); Mount v. VanNess, 35 N.J. Eq. 113, 114 (Prerog.1882); 7 New Jersey Practice, Wills and Administration § 1015 n. 2 at 114 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 1984). We are persuaded this approach is more equitable in that lost interest is an integral part of the estate's damage claim as a result of the defalcation, and comports with the fiduciary responsibility of an administrator to act prudently with respect to the assets of an estate. N.J.S.A. 3B:10-26; In re Beales' Estate, 13 N.J.Super. 222, 228-29, 80 A.2d 311 (App.Div.), certif. denied, 7 N.J. 581, 83 A.2d 381 (1951).

III
In summary, we affirm the October 21, 1998 order requiring payment of the counsel fees awarded by the Estate of Herbert Lash. We affirm that portion of the order directing interest be calculated at simple interest rates. We modify that portion of the October 21, 1998 order allowing the calculation of interest from January 1993 to provide that simple interest be calculated on the applicable amount from the date each improper use of the funds was made by the administrator. We remand for further proceedings to determine the commencement date for calculation of simple interest on each defalcation that forms the basis for the amounts surcharged against the bond. We do not retain jurisdiction.
NOTES
[1] Jack Lance is identified as a defendant in the caption of the October 21, 1998 final judgment. However, Lance was not named as a defendant in any of the complaints contained in the record.
[2] The record does not disclose the origin of the spreadsheet. While the judge directed counsel to reach an agreement with respect to the date on which interest should begin to accrue and the particular rate that should be applied each year that the money was not in the estate, there is nothing in the record explaining whether the spreadsheet was submitted by the parties jointly, individually, or at all.