865 A.2d 728 (2005)
374 N.J. Super. 502
DIALAMERICA MARKETING, INC., a Delaware Corporation, Plaintiff-Appellant,
v.
KEYSPAN ENERGY CORPORATION, a New York corporation; The Brooklyn Union Gas Company, a New York corporation; Keyspan Energy Services, Inc., a Delaware corporation and Keyspan Energy Services, LLC, a Delaware limited liability company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 2004.
Decided February 1, 2005.
*729 Jeffrey M. Garrod, Roseland, argued the cause for appellant (Orloff, Lowenbach, Stifelman & Siegel attorneys; Mr. Garrod of counsel, Mr. Garrod and Craig A. Ollenschleger, on the brief).
John F. Fanning, argued the cause for respondents (Cullen Dykman Bleakley Platt, Brooklyn, NY and McElroy, Deutsch & Mulvaney, attorneys; Joseph P. La Sala, of counsel Morristown, Mr. Fanning and Meredith A. Walling, Morristown, on the brief).
Before Judges FALL, PAYNE and C.S. FISHER.
The opinion of the court was delivered by
PAYNE, J.A.D.
In this appeal from an award of prejudgment interest, we are, as we once previously were (see Benevenga v. Digregorio, 325 N.J.Super. 27, 34-35, 737 A.2d 696, 700 (App.Div.1999), certif. denied, 163 N.J. 79, 747 A.2d 287 (1999)), called upon to construe the prejudgment interest provisions of R. 4:42-11(a), applicable in tort actions, in the context of a suit claiming contractual damages. In doing so, we reach a result similar to that in Benevenga, while clarifying the holding of that case.
During the period from April 1996 through September 1999, appellant DialAmerica Marketing, Inc. provided on a cost plus overhead basis marketing and sales, billing and collection, and customer services to respondent KeySpan Energy Corporation[1] in anticipation of the execution of a joint venture agreement and, when that did not occur, under a court injunction that was in effect from December 18, 1997 to September 9, 1999. In an action instituted in the Chancery Division, DialAmerica sought among other things payment for its services on theories of breach of contract and quantum meruit.
Following transfer to the Law Division and a four-day bench trial before Judge Charles J. Walsh, the court issued an opinion on November 16, 2001 finding DialAmerica to be entitled to an award of compensatory damages in the amount of $10,760,789, subject to certain adjustments. In that opinion, Judge Walsh also awarded prejudgment interest "based on the State of New Jersey Cash Management Fund rate pursuant to R. 4:42-11(a)(ii)." He stated:
While the award of prejudgment interest is appropriate here, the court believes that prejudgment interest should be set at a risk-free rate. This is designed to insure that DialAmerica will not receive a windfall. The rate will be based on the State of New Jersey Cash Management Fund rate for the years in question.
Shortly after receipt of the opinion, counsel for DialAmerica queried whether the reference to the use of R. 4:42-11(a)(ii) constituted a typographical error, since "[s]ubsection (a)(ii) states that it is applicable to judgments not exceeding the monetary limit of the Special Civil Part. Subpart (a)(iii) of that rule is applicable to judgments exceeding the monetary limit of the Special Civil Part." Judge Walsh concurred, and the parties thereafter submitted a judgment calculating compensatory damages to be $10,779,914 and prejudgment *730 interest to be $2,685,292 pursuant to R. 4:42-11(a)(iii). Subsection (a)(ii) provides for interest to be calculated in accordance with the State of New Jersey Cash Management Fund rate; subsection (a)(iii) adds two percent per annum to that rate.
The judgment was signed by Judge Walsh immediately upon its receipt on December 6, 2001. However, because "the amount surprised the court" the judge sought to review the interest calculations and, upon determining that they had been based on the higher rate of interest authorized by subsection (a)(iii), he requested that prejudgment interest be recalculated utilizing the New Jersey Cash Management Fund and the short-term federal government lending rates. Interest recalculated in accordance with the Cash Management Fund rate was determined to be $1,956,097. Following receipt of the revised figures, on March 1, 2002, Judge Walsh entered an amended judgment incorporating the $1,956,097 amount. A further technical correction to the judgment was made on March 12, 2002. Although the judge acknowledged that appeals had been filed in the interval between December and March, he determined that he retained jurisdiction to correct his error under McNair v. McNair, 332 N.J.Super. 195, 199, 753 A.2d 147, 149 (App.Div.2000).
On appeal, we confirmed the compensatory damage award substantially for the reasons articulated by Judge Walsh. DialAmerica Marketing Inc. v. KeySpan Energy Corp., Docket Nos. A-2401-01T3 and A-2404-01T3 (App.Div. May 20, 2003) (slip op. at 22). However we vacated the prejudgment interest award contained in the March 1 and March 12, 2002 judgments and remanded the matter to Judge Walsh "for the exercise of the court's discretion in awarding prejudgment interest after consideration and weighing of the equities involved, and for issuance of a statement of its findings and conclusions pursuant to R. 1:7-4(a)." Id. at 32.
In our decision, we rejected KeySpan's argument that no prejudgment interest was warranted and its alternative argument that it should not be charged with prejudgment interest during the period that the injunction was in effect, holding:
We find no misapplication of discretion in the trial court's conclusion that an award of prejudgment interest was warranted. We reject as without merit defendants' contention that prejudgment interest on payment for services that they were judicially compelled to accept amounts to punishment. While the injunction remained in effect, defendants were under a legal duty to accept those services, from which they benefitted, yet they made no payments. DialAmerica was entitled to compensation, but defendants  not DialAmerica  had the use of those funds. Accordingly, the judge properly concluded that suspending the interest during the period that the injunction was in effect would have unfairly penalized DialAmerica.
[Id. at 29-30.]
We further found no misapplication of discretion by the court in declining to award prejudgment interest at the prime lending rate, as DialAmerica had argued on appeal to have been proper. Ibid. However, after noting the court's determination to change the basis for the prejudgment interest calculation from that provided by R. 4:42-11(a)(iii) to that provided by R. 4:42-11(a)(ii), we observed that "other than expressing surprise at the amount of the prejudgment interest award when calculated by adding the additional two percent, the judge did not explain the equitable considerations that underpinned the exercise of his discretion." Id. at 31. We therefore remanded the matter with the *731 instructions that we have previously set forth.[2]
On remand, following consideration of the parties' briefs and oral argument, Judge Walsh adhered to his determination to award prejudgment interest of $1,956,097 in accordance with R. 4:42-11(a)(ii). He stated:
In Benevenga v. Digregorio, 325 N.J.Super. 27, 29-30, 737 A.2d 696[, 697] (App.Div.), certif. denied, 163 N.J. 79, 747 A.2d 287 (1999), the Appellate Division concluded that in a commercial dispute involving allegations of breach of contract that an award of prejudgment interest based on "the rate of return earned by the State Treasurer contemplated by R. 4:42-11(a)(ii)" is the appropriate one "lacking unusual circumstances." See also In re Estate of La[sh], 329 N.J.Super. 249, 263-264, 747 A.2d 327[,335-336] (App.Div.2000); De Puy, Inc. v. Biomedical Eng'g Trust, 216 F.Supp.2d 358, 381 n. 22 (D.N.J.2001), aff'd sub. nom., Pappas v. De Puy Orthopaedics, Inc., 33 Fed.Appx. 35 (3d Cir.2002).
As noted in the Court's November 16, 2001 Letter Opinion, no "unusual circumstances" exist here which favor awarding a higher prejudgment interest rate to DialAmerica Marketing, Inc. ("DialAmerica"). Rather the contrary appears to be the case. This is a cost plus overhead contract thereby making the calculation of damages a more simple task than in most cases. Moreover, it is undisputed that, after December 18, 1997 and until September 30, 1999, Keyspan Energy Corp. ("Keyspan") was judicially compelled to accept services from DialAmerica that it did not request and may not have required. In fact, as noted by this Court and the Appellate Division, Keyspan made several attempts to extract itself from the coerced business relationship, including but not limited to its July 1998 motion for summary judgment dismissing DialAmerica's Complaint and its April 1999 motion to vacate the injunction. Thus, it was initially argued to this Court that no pre-judgment interest should have been awarded to Dial America, given the nature of the relationship between the parties and the coercive circumstances under which DialAmerica's services were provided.
The Court had the discretion to suspend the [accrual] of prejudgment interest for the period the injunction was in effect. Elec. Mobility Corp. v. Bourns Sensors/ Controls, Inc., 87 F.Supp.2d 394, 403 (D.N.J.2000). But it chose not to do so. Nevertheless, this fact, too, calls for the award of a risk free rate of interest. That rate is best reflected by the New Jersey Case Management Fund rate.
DialAmerica has appealed from Judge Walsh's order granting prejudgment interest at the lower rate established by R. 4:42-11(a)(ii). We affirm.

I.
On appeal, both parties argue that Judge Walsh's task on remand was essentially a ministerial one of complying with R. 4:42-11(a), while providing his rationale for doing so. However, DialAmerica argues that compliance with subsection (a)(iii) was required, whereas KeySpan contends that subsection (a)(ii) was the appropriate reference. Were the task that *732 simple, we would in our prior opinion simply have confirmed a judgment incorporating either the $2,685,292 or the $1,956,097 prejudgment interest figure. We did not do so because, in contract actions, prejudgment interest is assessed on a discretionary basis as the result of the application of equitable principles. North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 575, 730 A.2d 843[, 851] (1999); Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478, 541 A.2d 1063 (1988); Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 131, 351 A.2d 349 (1976); Society Hill Condo. Assoc., Inc. v. Society Hill Assocs., 347 N.J.Super. 163, 178, 789 A.2d 138[, 147-148] (App.Div.2002). Thus, the strictures of R. 4:42-11 apply by their literal terms only to tort actions.
R. 4:42-11(b) provides in a tort context for payment of prejudgment interest commencing at a specified time, and it states that "[p]rejudgment interest shall be calculated in the same amount and manner provided for by paragraph (a) of this rule." Paragraph (a), as we have previously indicated, establishes the New Jersey Cash Management Fund rate as the measure for prejudgment interest "[f]or judgments not exceeding the monetary limit of the Special Civil Part," R. 4:42-11(a)(ii), and adds two percent per annum to the rate specified for prejudgment interest on "judgments exceeding the monetary limit of the Special Civil Part." R. 4:42-11(a)(iii). The latter provision was adopted in 1996 because, according to Judge Pressler's comments,
the low rate of interest provided a disincentive for judgment debtors to satisfy judgments. Clearly an interest rate of 3.5% as provided for 1995 represents a cost of money far below commercial rates making appeals more economically viable for many categories of judgment debts than prompt payment of the judgment. The two percent add-on produces a more commercially reasonable rate.
[Pressler, Current N.J. Court Rules, comment 1 on R. 4:42-11(a) (2005).]
It is tempting to adopt wholesale the carefully articulated structure and rationale of R. 4:42-11(a) in a commercial contractual context, and that is what DialAmerica argues that we should do. However, were we to do so, we would be doing violence to the rule itself, which specifically applies only to tort actions, and to the long-held distinction between principles applicable to prejudgment interest awards in tort and contractual matters. In tort, prejudgment interest is automatic; in contract actions, it is a matter of equity. As a consequence, we cannot view in a contractual setting the distinction in R. 4:42-11(a) between the treatment of small and large judgments for purposes of calculating prejudgment interest[3] as binding, *733 nor can we automatically assume that because higher interest rates are "more commercially reasonable," they should invariably be imposed in disputes such as the present one. At most, these aspects of the rule constitute factors for the court's consideration in exercising its discretion in determining to award prejudgment interest in this different context and in setting the rate of that interest.
The matter is further complicated by the construction that has been placed on the language of our decision in Benevenga, supra, 325 N.J.Super. at 35, 737 A.2d at 700. In that insurance coverage case, we affirmed the trial court's determination to award prejudgment interest calculated in accordance with the New Jersey Cash Management Fund rate, rejecting the parties' arguments that the court should have looked to industry standards instead.[4] No party argued that the interest rate established by R. 4:42-11(a)(iii) applied. In this context, we held that "lacking unusual circumstances, ... the rate of return earned by the State Treasurer contemplated by R. 4:42-11(a)(ii) is the standard to which trial judges should adhere" in assessing prejudgment interest.
Benevenga was cited by the federal district court in De Puy, Inc. v. Biomedical Eng'g Trust, 216 F.Supp.2d 358, 381 n. 22 (D.N.J.2001), aff'd sub nom. Pappas v. De Puy Orthopaedics, 33 Fed.Appx. 35 (3d Cir.2002) in a footnote that stated:
Pursuant to New Jersey law, the rate at which prejudgment interest is calculated is within the discretion of the court. Musto v. Vidas, 333 N.J.Super. 52, 71-75, 754 A.2d 586[, 596-99] (App.Div.2000). The rate applied in New Jersey to postjudgment interest pursuant to New Jersey Court Rules 4:42-11(a)(ii) generally provides an appropriate benchmark, In re Estate of Lash, 329 N.J.Super. 249, 263-64, 747 A.2d 327[, 335-36] (App.Div.2000); Benevenga v. Digregorio, 325 N.J.Super. 27, 35, 737 A.2d 696[, 700] (App.Div.1999). That rate has varied over the eleven year period at issue.
[Ibid.]
KeySpan argues that Benevenga establishes the interest rate of R. 4:42-11(a)(ii) as the fall-back prejudgment rate absent "unusual circumstances," and that De Puy confirms its interpretation of the case. We disagree. Our decision in Benevenga is properly interpreted merely as distinguishing between those unusual circumstances in which a prejudgment interest rate other than that identified in R. 4:42-11(a) should be applied and those other circumstances in which a rate identified by the Rule constitutes the standard, and as establishing the Rule as the default measure. Because the applicability of subsection (a)(iii) was not raised, we had no occasion to address it. In re Estate of Lash, 329 N.J.Super. 249, 747 A.2d 327 (App.Div.2000), aff'd in part, rev'd in part, 169 N.J. 20, 776 A.2d 765 (2001) in no wise strengthens KeySpan's position, since it merely affirms, as a valid exercise of discretion, a trial court's use of R. 4:42-11(a) in assessing prejudgment interest, rather than an investment market rate of interest, in a case involving breach of fiduciary *734 duty in the administration of an estate. The decision therefore parallels that in Benevenga as we have interpreted it. We thus find, in the absence of the "unusual circumstances" to which we specifically adverted in Benevenga, that subsection (a)(ii) provides an appropriate starting point in determining the rate of prejudgment interest, but we do not in any sense foreclose the use of subsection (a)(iii) in connection with a rule-based calculation of prejudgment interest, should the equities demand it.

II.
With these principles in mind, we turn to the decision of Judge Walsh, bearing in mind that, by virtue of our prior opinion, we have already confirmed his determination that prejudgment interest was owed for the entire period of the parties' business relationship and found no misapplication of discretion by Judge Walsh in declining to award prejudgment interest at the prime lending rate. DialAmerica, supra, slip op. at 30. In his opinion, Judge Walsh adopts the Cash Management Fund rate as his starting point, in accordance with his interpretation of Benevenga, a procedure with which we have no quarrel, as we have previously stated. He then articulates the equitable factors that he considered in determining to adhere to that interest rate, focusing on the fact that (1) DialAmerica could not reasonably have expected a profit (or, in an investment sense, an elevated rate of return) from its cost plus overhead contract with KeySpan; (2) from at least KeySpan's perspective, the continuation of the business relationship during the lengthy pendency of the injunction was involuntary 055[5]; and (3) despite the forced nature of that business relationship, the court had not determined to exercise its discretion to suspend prejudgment interest during the period that the injunction was in effect. These facts, the court found, called for "the award of a risk free rate of interest" best reflected by the New Jersey Case Management Fund rate.
We find no mistake of law or abuse of discretion in the court's determination, which reflects a measured analysis of the degree of compensation properly to be accorded to DialAmerica for lost earnings on the sum of money to which it was entitled, but was instead retained by KeySpan. North Bergen Rex Transport, supra, 158 N.J. at 574-75, 730 A.2d at 851; Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 506, 323 A.2d 495, 512-13 (1974). See also In re Estate of Lash, supra, 169 N.J. at 34, 776 A.2d at 773-74 (finding no abuse of discretion in an award of prejudgment interest in accordance with R. 4:42-11); Torres v. Schripps, Inc., 342 N.J.Super. 419, 438, 776 A.2d 915, 926 (App.Div.2001); A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co., 200 N.J.Super. 515, 525, 491 A.2d 1280, 1284-85 (App.Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985). We thus affirm the court's order.
We have carefully reviewed the parties' remaining arguments, and find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Defendant KeySpan Energy Corporation sells natural gas and electricity to residential and commercial customers in a defined geographic area. It is a wholly-owned subsidiary of Brooklyn Union Gas Company, a natural gas company. Defendant KeySpan Energy Services, LLC is a limited liability company formed in September 1997 to implement the projected joint venture between DialAmerica and KeySpan Energy Corporation.
[2] In doing so, we found that the court had lacked jurisdiction when it entered its March 2002 orders. R. 2:9-1(a). However, we observed that we would have readily granted a limited remand to permit the judge to finalize the exercise of his discretion if that had been the only defect. Id. at 31-32.
[3] The rationale for bifurcating the provisions of R. 4:42-11(a) had little to do with the compensation for lost earnings that justifies an award of prejudgment interest in a contract case. In its report to the Civil Practice Committee, the subcommittee that recommended the addition of subsection -11(a)(iii) discussed "the problem that partially motivated the Committee's vote to change the rate: the possibility that large-scale debtors such as insurance companies could view the relatively low rate of interest as an incentive to delay payment, perhaps by filing frivolous appeals." It stated:

We reasoned that this logic would affect only creditors with relatively large debts: for each percentage point of interest disparity, you need a $100,000 judgment to profit by even $1000 for a year's delay in payment. The countervailing consideration is that raising the interest rate enough to motivate such debtors would make it harder for the vast majority of small debtors to pay off judgments.
[1996 Report of the Supreme Court Civil Practice Committee, Proposed Amendments to R. 4:42-11, Appendix A at 4-5.]
A dual system was thus recommended with the jurisdictional limit of the Special Civil Part chosen as a "convenient break-point." Id. at 5.
[4] Plaintiffs argued that they were entitled to the rate of return on the insurer's investments that was reported by the A.M. Best reporting service, but calculated as the after-tax rate of return on its investments and underwriting. The defendant insurer argued that the court should have adopted a rate in accord with its statutory limit of investing in only the safest investments. N.J.S.A. 17:24-1. Benevenga, supra, 325 N.J.Super. at 34, 737 A.2d at 700.
[5] Although KeySpan may have expanded the relationship during that period, it was nonetheless substantially deprived of the ability to engage in business alternatives.