

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2007

# Gleason v. Norwest Mtg Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3495

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Gleason v. Norwest Mtg Inc" (2007). *2007 Decisions.* Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3495 & 06-1994

CRISTEN M. GLEASON,

Appellant in 06-1994

v.

NORWEST MORTGAGE, INC.,

Appellant in 01-3495

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-04242)
District Judge: Hon. Katharine S. Hayden

Submitted under Third LAR 34.1(a)
on March 29, 2007

Before: FISHER, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: November 9, 2007)

O P I N I O N

**ROTH,** Circuit Judge:

This appeal is our second acquaintance with the underlying trade dispute. We are asked to consider various alleged errors in the jury trial which was held on remand, after our first decision. For the following reasons, we will affirm the judgment of the District Court but vacate the award of prejudgment interest and remand this issue to the District Court.

## I. Background

Because the facts of this case are well-known to the parties and published in detail in our previous opinion, *Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130 (3d Cir. 2001), we present only limited background information. Cristen Gleason founded U.S. Recognition, Inc. (USR), and then in October 1991, sold the company to Norwest Mortgage, Inc., pursuant to a stock purchase agreement. Under the agreement, Norwest agreed that if it sought to sell USR within the first five years of ownership, Gleason would be afforded a thirty-day period in which to exercise a right of first refusal. If Gleason did not exercise that right within the thirty day window, Norwest would be free to sell USR to another buyer on terms substantially similar to those offered to Gleason. The parties also stipulated that their agreement would be governed in all respects by Minnesota law.

In 1993, Norwest acquired Boris Systems, Inc., USR's former competitor. With possession of both companies, Norwest began considering the sale of both as a single package. In 1996, Norwest commenced negotiations to sell USR and Boris as a package to Moore Business Forms, Inc.. The parties negotiated a sale of the package for $14 million. On July 19, Norwest offered to sell USR to Gleason for $3.5, the portion of the $14 million

package which Norwest attributed to the value of USR. Gleason did not purchase USR within thirty days. In August, after the offer to Gleason expired, the price for the USR-Boris package offered by Moore had fallen to $13.5 million. On September 27, Norwest and Moore signed two stock purchase agreements, one for USR and one for Boris, and Moore agreed to pay $3.5 million for USR. The parties did not close on the transactions at that time.

On September 27, 1996, Norwest again offered Gleason an opportunity to purchase USR at a price of $3.5 million. During the period in which this offer was open, Norwest and Moore closed on Boris. As part of the sale, Norwest entered into a non-compete agreement with Moore and agreed not to compete with Boris for five years after closing. Moore nonetheless allowed Norwest to operate USR in competition with Boris until USR was sold. Again, by the end of thirty days, Gleason had not purchased USR in accordance with the offer's acceptance terms. On November 1, 1996, Moore closed on USR pursuant to the September 27 stock purchase agreement.

Gleason filed in New Jersey state court an action against Norwest that was subsequently removed to the United States District Court for the District of New Jersey and that raised, *inter alia*, claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and, in an amended complaint, fraud. In September and October 1997, the District Court granted summary judgment against Gleason on these claims. Gleason appealed, arguing, *inter alia*, that the terms on which Moore purchased USR were not substantially similar to the terms on which USR was offered to Gleason. We determined that although the "non-financial terms" were substantially similar, a dispute of material fact

3

existed as to the similarity of the "price terms." It appeared possible that the $3.5 million that Moore purportedly paid for USR was a "padded" price which included value of the USR-Boris package which was not exclusive to USR, in which case an offer to Gleason for the purchase of USR, sans padding, for $3.5 would lack substantial similarity. We therefore remanded to the District Court "for hearing and fact finding on the price terms as they relate to substantial similarity." *Gleason*, 243 F.3d at 143. We also held that if Gleason could prove that Norwest breached its contract with him, the District Court would have to consider whether and to what extent Gleason suffered loss, detriment, or injury. Finally, we held that if a jury were to find that the price terms were not similar, it could also find that Norwest breached the implied covenant of good faith and fair dealing.

On remand, the District Court conducted a jury trial from July 17 through August 1, 2001, on two of Gleason's claims — breach of express contract and breach of the implied covenant of good faith and fair dealing. The jury returned a set of special verdicts in which it found that the price terms were not substantially similar, that the price terms of Norwest's offer to Gleason unjustifiably hindered Gleason's ability to exercise his right of first refusal, and that Gleason suffered economic loss as a result. Although the jury found that it was not reasonably foreseeable when Norwest purchased USR that its breach of the agreement would likely result in Gleason losing salary and benefits as President of USR, it found that it was reasonably foreseeable at that time that Norwest's breach would result in Gleason losing financial returns arising from his ownership of USR. Finally, the jury determined that the appropriate compensation for Gleason's losses was $125,000 for lost employment damages

4

and $875,000 for lost financial returns on the ownership of USR. On August 13, the District Court entered a final judgment in favor of Gleason, awarding the full $1,000,000 in compensatory damages found by the jury.

On August 27, Norwest moved, under Federal Rule of Civil Procedure 59, to set aside the portion of the judgment based on lost employment damages, arguing that this judgment was inconsistent with the jury's finding regarding the unforeseeability of this loss. On August 28, Gleason moved for an award of prejudgment interest, costs, and attorneys' fees. More than four years later, on February 22, 2006, the District Court ruled on these motions. The District Court denied Norwest's motion to set aside the verdict, awarded Gleason prejudgment interest, and deferred consideration of Gleason's claim for attorneys' fees and costs. In a subsequent order, the District Court awarded Gleason prejudgment interest in the amount of $366,847.63.

Norwest appealed. Gleason cross-appealed the award of prejudgment interest.

## II. Jurisdiction

The District Court had diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.


## III. Discussion

### A. Admissibility of Non-Price Terms

Norwest argues that in the jury trial on remand, the District Court improperly allowed

5

evidence of non-price terms to reach the jury. This evidence, Norwest argues, was inadmissible under the law of the case, as well as under Federal Rules of Evidence 401 and 403. The parties do not agree that Norwest objected at trial to all the evidence it now contests. We need not dwell on this dispute, however, because we find that the District Court acted within its sound discretion in admitting this evidence.

"It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). We exercise plenary review over a district court's adherence to the law of case, which involves the application of a legally-set standard. *See Lippay v. Christos*, 996 F.2d 1490, 1496 (3d Cir. 1993). Where, however, the law of the case is not implicated and all that remains is a challenge to district court's ruling on the admissibility of evidence, we review the ruling on an abuse of discretion basis. *Id.*

When we last confronted this case, we determined that although the non-price terms of Gleason's offer and Moore's purchase were substantially similar, a genuine material dispute existed as to the similarity of the price terms. We remanded for further proceedings on this dispute. Norwest argues that no non-financial terms could be discussed on remand because "the only issue to be decided by the Jury was whether the $3.5 million price offered to Gleason was substantially similar to the $3.5 million price paid by Moore." It should go without saying that we did not remand this case so that a jury would have the opportunity to contemplate tautologies. The question on remand was whether $3.5 million was an inflated

6

price. Because Moore was purchasing USR as part of a larger package, Moore had the ability to pay more for USR than it was worth, so long as it received a corresponding discount on the remainder of the package. We did not consider how Gleason would go about proving that $3.5 million for USR was an inflated price, and many options remained open. One unquestionably legitimate means of proving that USR's price was padded involved demonstrating that the remainder of the package Moore received was worth more than Moore ostensibly paid for it.

The admission of the disputed evidence did not violate the law of the case and the rules of evidence. For this reason alone, we conclude that the District Court did not abuse its discretion in admitting it.

Norwest also challenges the District Court's decision not to provide the jury with an instruction as to the definition of "price term" or to answer questions posed by the jury regarding the meaning of this term. Although a trial judge has some obligation to clarify points of law which confuse jurors, *see Walsh v. Miehle-Gross-Dexter, Inc.*, 378 F.2d 409, 415 (3d Cir. 1967), questions of fact remain squarely within the province of the jury. In light of the multitude of factors that can affect price, determining which factors actually did affect the price is a task for the jury, not the judge. By offering any definition of "price term," the district judge would have risked prejudging questions for the jury. The court was within its discretion in allocating the burdens of answering questions as it did.[1]

---

[1]Because we affirm on the issue of substantial similarity, we need not address the jury's finding that Norwest breached the covenant of good faith and fair dealing.

7

**B. Damages for Breach of Right of First Refusal**

Norwest argues that the evidence presented at trial was insufficient as a matter of law for the jury to find that Norwest suffered any loss because the supposedly lost value to Gleason was based on lost profits that were not reasonably certain to materialize. For a party to challenge on appeal the sufficiency of the evidence to support a jury's finding, that party must have first made an appropriate post-verdict motion under Federal Rule of Civil Procedure 50(b). *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 126 S. Ct. 980, 989 (2006); *Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990). Norwest filed no such post-verdict motion, and consequently, we will not consider its challenge to the sufficiency of the evidence.

In its reply brief, Norwest seeks to avoid the consequences of its failure to file an appropriate motion by arguing that, in fact, it is not challenging the sufficiency of the evidence. Rather, Norwest argues, it is challenging the admissibility of the evidence of loss on which the jury relied. This argument is belied by Norwest's opening brief, which contains no direct challenge to the admissibility of that evidence and focuses entirely on the lack of an evidentiary basis to support the jury's finding. Although Norwest is entitled to use its reply brief to clarify the issues before us, it may not add new issues for consideration. Failure by a party to identify an issue in its opening brief constitutes waiver of that issue on appeal. *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 402 (3d Cir. 2006). Norwest is confined to the sufficiency challenge raised in its opening brief, and it is precluded from making this challenge due to its failure to file a Rule 50(b) motion.

8

## C. Lost Employment Damages

Norwest appeals from the District Court's denial of its motion under Rule 59 to set aside the portion of the verdict related to lost employment damages.[2]  The jury awarded Gleason $125,000 in "lost employment damages," even though the jury also found that it was not "reasonably foreseeable, at the time the Stock Purchase Agreement between Norwest and Gleason was made, that Norwest's breach of the right of first refusal would likely result in Gleason losing salary and benefits he was earning as the President of USR."  Norwest argues that these jury findings cannot be reconciled because, under Minnesota law, damages for breach of contract cannot be awarded if the loss is not reasonably foreseeable or contemplated by the parties at the time the contract is made.  *See Franklin Mfg. Co. v. Union Pac. R.R. Co.*, 248 N.W.2d 324, 325 (Minn. 1976).  If the jury found that damages based on lost employment were not foreseeable, then, under governing law, it could not have awarded damages for that loss.

Gleason contends that these two findings are not inconsistent because the jury only found that it was not foreseeable that Gleason would lose the salary and benefits he was earning as President of USR.  It did not explicitly find that it was unforeseeable that Gleason would lose his job as a result of the breach.  What the jury really meant, says Gleason, is that

---

[2]We review the denial of a motion to alter the verdict using the same standard of review as is appropriate to review the underlying judgment.  *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996).  When reviewing a jury's answers for inconsistency, the critical question is whether the answers are necessarily inconsistent with each other or the verdict.  *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 124 (3d Cir. 2004).

it was not foreseeable that Gleason would lose *the full extent* of his compensation from USR (i.e., *all* his salary and benefits) because the parties expected that Gleason would obtain other employment to mitigate his damages, but that it was foreseeable that Gleason would suffer a loss equal to the difference between his compensation at USR and his compensation from employment elsewhere.

We "are obliged to attempt to harmonize the answers, for it is well established that a verdict must be molded consistently with a jury's answers to special interrogatories when there is *any* view of the case which reconciles the various answers." *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1159 (3d Cir. 1989) (emphasis added). *See also Citizens Financial Group*, 383 F.3d at 124 (holding that the critical question is whether the answers are *necessarily* inconsistent with the verdict). Gleason's explanation harmonizes the answers without suffering the defect of implausibility, and we therefore accept it. The District Court's denial of Norwest's Rule 59(b) motion will be affirmed.[3]

### D. Prejudgment Interest

Norwest and Gleason both challenge the District Court's award of prejudgment interest to Gleason in the amount of $366,847.63. As an initial matter, we note that the award of prejudgment interest is governed by New Jersey law. Federal courts sitting in

---

[3]Norwest argues that, alternatively, it cannot be liable for employment damages because it already paid Gleason for his employment loss pursuant to a previous judgment. That previous judgment covered only those losses suffered within a limited time period, and the jury's verdicts can be read as compensating Gleason for his losses as suffered for the duration of his career, discounted for compensation received from other employment.

10

diversity must apply state law with respect to prejudgment interest. *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). Although the parties agreed to be bound by Minnesota law, the law of the forum state — in this case, New Jersey — applies to questions of process, of which the award of interest is one. *See N. Bergen Rex Transport, Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999).

Under New Jersey law, a trial judge in a contract action has discretion to award prejudgment interest in accordance with equitable principles. *County of Essex v. First Union National Bank*, 891 A.2d 600, 608 (N.J. 2006). We review the award of prejudgment interest in this case to determine whether the District Court abused its discretion in its award of prejudgment interest.

An examination of the special verdict form reveals that the jury's award of $125,000 for lost employment damages was for future compensation. An award of prejudgment interest for future loss is not allowed under New Jersey law. *See Gilbert v. Durand Glass Mfg. Co., Inc.*, 609 A.2d 517, 523 (N.J. Super. App .Div. 1992) (holding that trial court abused its discretion where it awarded prejudgment interest on the damages for lost earnings due to breach of an implied contract in a wrongful termination suit, since the earnings were prospective).

Norwest argues that the jury's award of $875,000 for "lost financial returns on the ownership of USR" similarly represents future losses. We disagree. Notwithstanding the characterization of this award on the special verdict form as "lost financial returns," the record suggests that this award reflects the value of Gleason's right of first refusal, which the

11

jury found Norwest had unjustifiably hindered. This value was based on the differential between the right-of-first refusal price offered to Gleason ($3.5 million) and the actual price of USR. While USR was valued by discounting the anticipated future returns, the ultimate award was meant to compensate for past, not future, losses. The methodology used to calculate those losses should not foreclose Gleason from obtaining prejudgment interest.

We agree with Gleason that the District Court abused its discretion in calculating the prejudgment interest. New Jersey state law distinguishes between postjudgment interest, which is governed by New Jersey Court Rule 4:42-11(a); prejudgment interest in tort cases, which is governed by Court Rule 4:42-11(b); and prejudgment interest in contract cases, which is governed by equitable principles. *County of Essex*, 891 A.2d at 609; *see also W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 219 (3d Cir. 1984); *DialAmerica Marketing, Inc. v. KeySpan Energy Corp.*, 865 A.2d 728, 732 (N.J. Super. A.D. 2005). Although reference to the postjudgment interest rules may serve as an appropriate benchmark in contract cases, *DialAmerica*, 865 A.2d at 733-34, the determination must ultimately be based on the equities of the case. As the New Jersey Supreme Court explained in *County of Essex*, "[T]he interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." 865 A.2d at 608 (internal quotations omitted).

The District Court awarded Gleason prejudgment interest based on the rate applied in tort cases pursuant to Court Rule 4:42-11(b). Finding "no exceptional circumstances" in this case, the District Court rejected Gleason's claim that the proper prejudgment interest rate

12

was the prime rate plus two percent, compounded, on the grounds that the Court Rule 4:42-11 does not provide for compounding and the statutory rate was not based on the prime rate plus two percent.

In making its calculation, the District Court did not address whether and how this amount of interest would compensate Gleason for the wrongful detention of the $875,000 to which the jury found he was entitled. Had Gleason borrowed $875,000, presumably he would have paid the prime rate. *See Musto v. Vidas*, 754 A.2d 586, 599 (N.J. Super. 2000) (upholding application of the prime lending rate); *Tobin v. Jersey Shore Bank*, 460 A.2d 195, 198 (N.J. Super. 1983) ("Generally, the measure of damages to the creditor will be the cost to him of borrowing the amount of money wrongfully withheld by the debtor. In most cases that will be the prime lending rate."). Accordingly, we will remand the issue of the appropriate interest rate to the District Court. We will also remand the issue of whether the prejudgment interest should be compounded. *See Musto*, 754 A.2d at 599 (finding no abuse of discretion in the decision to award compound rather than simple interest); *Borough of Wildwood Crest v. Smith*, 563 A.2d 48, 49-50 (N.J. Super. A.D. 1988) (summarily affirming award of compound interest).

The District Court awarded prejudgment interest only until August 13, 2001, when judgment was entered pursuant to the jury verdict, rather than until February 23, 2006, when the District Court decided Norwest's Rule 59 motion and the judgment became final for purposes of appeal. As noted above, the purpose of a prejudgment interest award is to compensate a party for the lost use of monies. In this case, Gleason was deprived of the

13

$875,000 in economic losses for nearly five years. Nothing in the record indicates that he was responsible for that delay. As such, the equities in this case suggest that the proper termination period for prejudgment interest should run until February 2006. *See Adamson v. Chiovaro*, 705 A.2d 402, 408 (N.J. Super. A.D. 1998) (rejecting the contention that prejudgment interest should have been suspended where there was a six-month delay between the return of the jury verdict and the entry of final judgment because to do so "would unfairly penalize plaintiff"). We will remand this issue to the District Court accordingly.

## IV. <u>Conclusion</u>

For the foregoing reasons, we will vacate and remand the award of prejudgment interest but we will affirm the remainder of the judgment of the District Court.